**MONTROSE CHEMICAL CORP., Plaintiff,**

v.

**AMERICAN MOTORISTS INS. CO., et al., Defendants.**

Nos. CV 94–5652–KN, CV 94–5851–KN and CV 94–5853–KN *to* CV 94–5857–KN.

United States District Court, C.D. California.

Sept. 29, 1995.

Order on Sanctions, Nov. 30, 1995.

David L. Mulliken, Kristine L. Wilkes, De-siree Icaza Kellogg, Latham & Watkins, San Diego, CA, Harvey R. Levine, Craig A. Miller, Levine Steinberg & Miller, San Diego,

CA, for Montrose Chemical Corporation of California.

Barry R. Ostrager, Simpson Thacher & Bartlett, New York City, David Huebner, Nikola M. Mikulicich, Jr., Coudert Brothers, Los Angeles, CA, for Travelers Indemnity Co.

ORDER Re: Travelers Indemnity
Company's Motion for Rule
11 Sanctions

KENYON, District Judge.

*Procedural Background*

All seven of these cases involve the alleged duty of three insurance companies, American Motorists Insurance Company ("AMIC"), Travelers Indemnity Company ("Travelers"), and Insurance Company of North America ("INA") to defend Montrose Chemical Corporation ("Montrose") in suits involving seven sites polluted with DDT. Montrose initiated its first suit, CV 94–5519 WDK (BQRx), against the defendant insurance companies on August 12, 1994. This case was assigned to Judge William Keller, and involved the three insurance companies' duties to defend a suit filed in California State Court entitled Brown & Bryant, Inc. v. Great Lakes Chemical Corp. Montrose dismissed this complaint without prejudice the same day it was filed. On August 18, 1994, Montrose filed CV 94–5652 KN (JRx). This case involved the three insurance companies' duty to defend a suit entitled Alderman v. Cadillac Fairview/California. On August 26, 1994, Montrose filed six additional complaints: CV 94–5851 KN (JRx), CV 94–5853 KN (JRx), CV 94–5854 KN (JRx), CV 94–5855 KN (JRx), CV 94–5856 KN (JRx), and CV 94–5857 KN (JRx).

CV 94–5856 involved the same suit at issue in the case Montrose dismissed, CV 94–5519 WDK (BQRx). Montrose, however, incorrectly identified the low number case as CV 94–5652 KN (JRx). On October 21, 1994, Travelers and AMIC filed their own notice of related cases, correctly identifying the low number case as CV 94–5519 WDK (BQRx). Travelers and AMIC alleged that the failure to identify CV 94–5519 WDK (BQRx) as the low number case was intentional, and was an attempt to "judge shop" on the part of Montrose. Judge Keller issued an order to show cause, but found in a hearing on November 17, 1994, that sanctions were not warranted.

On December 7, 1994, Judge Keller recused himself from the cases, and all cases were transferred to this Court. Prior to the recusal, on October 21, 1994, Travelers filed a notice of motion to dismiss for lack of subject matter jurisdiction, set for November 21, 1994. Once the cases were transferred to this Court, however, the motion was not reset until May 9, 1995. This Court granted the motion to dismiss for lack of subject matter jurisdiction on June 20, 1995.

On October 31, 1994, Travelers served on Montrose a motion for Rule 11 sanctions relating to the failure to correctly list the low number case, and for fraudulently asserting federal subject matter jurisdiction. That motion was apparently never filed. On July 27, 1995, Travelers renoticed the motion for sanctions, and filed an amended motion. The amended motion asserted the same grounds for sanctions as the original motion.

*Analysis*

Montrose asserts that sanctions cannot be imposed because Travelers failed to give Montrose notice as required by Rule 11. Travelers alleges two grounds for sanctions: Montrose's error in identifying the correct low number case, and Montrose's failure to properly allege subject matter jurisdiction. Montrose argues that even if sanctions are to be imposed, Travelers may not recover the full amount of its attorneys' fees expended defending the seven suits, as Travelers delayed in presenting to this court its motion to dismiss for lack of subject matter. These issues will be discussed seriatim.

I. Notice pursuant to Fed.R.Civ.Proc. 11(c)(1)(A).

▮ Montrose argues that the sanction motion should be denied because it was not given notice as required by Rule 11(c)(1)(A). Rule 11(c)(1)(A) states that:

[A motion for sanctions] shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . ,

the challenged paper ... is not withdrawn or appropriately corrected.

This provision was added in 1993 to "provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position...." Advisory Committee Notes, 1993 Amendment.

Travelers complied with this requirement by serving its initial motion for sanctions on October 31, 1994. The motion put Montrose on notice that Travelers would seek sanctions for Montrose's filing an incorrect notice of related cases, and for frivolously asserting federal subject matter jurisdiction in its complaints. This notice gave Montrose the opportunity to dismiss its complaint and to rectify its inadequate assertion of jurisdiction, affording it an opportunity to seek the "safe harbor" the notice provision is intended to provide. Travelers did not reset this motion before this Court until nine months later when its motion to dismiss for lack of subject matter jurisdiction was granted; however, this delay does not negate the fact that Montrose was given notice of the possibility of sanctions and provided the opportunity to "withdraw its position," as the notice provision is designed to provide. Therefore, this Court finds that Montrose was given adequate notice pursuant to Rule 11(c)(1)(A).

## II. Sanctions for "judge shopping"

Travelers asserts that one of the grounds for sanctions is Montrose's filing of a misleading notice of related cases, purportedly to facilitate "judge shopping". In a hearing on November 17, 1994, Judge William Keller determined that Montrose should not be sanctioned for the misfiled notice, and found that the mistake was due to inadvertence, not an attempt to "judge shop." Although Judge Keller found that Montrose's failure to list the correct low number case did not warrant sanctions, however, Montrose's actions do provide a context in which to evaluate its later failures.

## III. Sanctions for the complaints

■ The other alleged basis for sanctions is that Montrose's complaints were frivolous in that Montrose improperly alleged subject matter jurisdiction. A corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business ..." for the purposes of diversity jurisdiction. 28 U.S.C. § 1332(c). Therefore, a complaint alleging diversity jurisdiction must allege all states of incorporation, and the state of the corporation's principal place of business. *Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423, 426 (9th Cir.1973); *see New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1301 (9th Cir.1989). In the complaints, Montrose alleged the principal place of business and the state of incorporation for each of the defendants, yet failed to do so for itself. In response to the motion to dismiss by Travelers, Montrose asserted that its principal place of business was in Nevada. The only connection that Montrose had with Nevada was a chemical facility that Montrose leased out. All of the rest of the corporate activities took place in Connecticut, where all of the corporation's employees were located. Connecticut, however, was also Travelers's principal place of business; therefore an assertion of Connecticut citizenship by Montrose would have destroyed citizenship.

■ The Ninth Circuit has outlined two tests available to be used in determining the principal place of business. The "nerve center" test looks to the corporate headquarters. The "place of operations" test looks to the state where a substantial amount of the corporation's business takes place. Generalizing from these two tests, "the bulk of corporate activity, as evidenced by the location of daily operating and management activities, governs the choice of principal place of business." *Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772, 776 (9th Cir.1992).

Applying these tests to the factual scenario in Montrose, it is clear that there is no viable argument that Nevada was the principal place of business. The Corporate headquarters are located in Connecticut, and all of its management activities take place there. While Montrose does lease out the chemical facility it owns in Nevada, the business of leasing out the facility takes place in Connecticut. Montrose's sole office is located in

Connecticut, and all of Montrose's employees are located in Connecticut; therefore all of Montrose's business activity must take place in that state. It thus strains credulity to assert that Nevada, despite the location of the leased facility there, could possibly be Montrose's principal place of business.

■ A party may be sanctioned for filing a complaint in federal court that the plaintiff must have known lacked a factual foundation for federal court subject matter jurisdiction. *See Orange Production Credit Ass'n v. Frontline Ventures, Ltd.,* 792 F.2d 797, 801 (9th Cir.1986). Montrose's counsel, at the time it filed the complaints, was or should have been aware of the limited nature of Montrose's contacts with the state of Nevada, and should have known that it could not properly assert the existence of subject matter jurisdiction. Corporate filings, responses to interrogatories in the underlying state court cases, and the deposition of Mr. Frank C. Backman, Chief Executive Officer, President, and Secretary-treasurer of Montrose all identified Connecticut as Montrose's principal place of business. It was therefore unreasonable for Montrose to assert a principal place of business other than Connecticut, and sanctions should be imposed on Montrose for frivolously asserting subject matter jurisdiction.

Montrose's failure to initially plead its "principal place of business" also supports the imposition of sanctions. In its complaints, Montrose correctly alleged the principal place of business and states of incorporation for the defendants, yet failed to do so for itself. The experience of Montrose's counsel supports an inference that the failure to plead Montrose's principal place of business was not an inadvertent error, but rather a recognition that the assertion of diversity jurisdiction was frivolous. *Huettig & Schromm, Inc. v. Landscape Contractors Council,* 790 F.2d 1421, 1426–27 (9th Cir. 1986) (holding that experience of counsel is relevant to imposing sanctions).

IV. Delay in bringing motion

Montrose asserts that Travelers cannot seek sanctions for the total amount of attorneys' fees they expended defending these actions because Travelers delayed for almost five months before bringing the motion to dismiss for lack of subject matter jurisdiction. *See, e.g., Dubisky v. Owens,* 849 F.2d 1034, 1037–38 (7th Cir.1988). The delay, however, was not the fault of Travelers, but rather resulted from some confusion about whether the motion had to be reset when the case was transferred from Judge Keller to this Court. Therefore, sanctioning Montrose for the full amount of attorneys' fees expended by Travelers in defending the federal suits is appropriate.

### Conclusion

Travelers' motion for Rule 11 sanctions for frivolously asserting diversity jurisdiction is **GRANTED.** Montrose's counsel Latham and Watkins shall therefore be sanctioned in an amount equal to the attorneys' fees expended by Travelers in defending the complaints. Montrose, however, has requested an opportunity to contest the amount of attorneys' fees that Travelers is claiming, and therefore Travelers shall file documentation to substantiate the amount of fees it has requested within fourteen days of the date of this order. After the expiration of that period, Montrose shall have seven days in which to file a memorandum contesting the amount of fees, if it wishes to do so.

IT IS SO ORDERED.

ORDER Re: Rule 11 Sanctions

This Court previously determined that Latham and Watkins should be sanctioned for filing seven frivolous actions. *See* Order of September 29, 1995. The sanction was to be the amount of attorneys' fees expended by Travelers Indemnity Company ("TRAVELERS") in defending the seven suits, but Latham and Watkins requested an opportunity to contest the amount of fees should the sanctions be granted. Based on the papers submitted in response to the Court's request for further documentation of attorneys' fees, the Court hereby **SANCTIONS** Latham and Watkins in the amount of $71,678.58. Travelers has documented $79,239.38 in attorneys' fees relating to defending the seven lawsuits. Fees amounting to $7,560.80 have been subtracted from the amount awarded as these

fees are related to mistakes on Travelers' part in submitting a flawed judgment. Fees brought about by the complaining party's own misconduct are not awardable as sanctions. *See Mossman v. Roadway Express, Inc.*, 789 F.2d 804, 806 (9th Cir.1986). Latham and Watkins will also not be sanctioned for the $52,453.85 in attorneys' fees it cost Travelers to prepare the motion for sanctions, as fees relating to the preparation of the motion for sanctions itself may not be awarded as sanctions. *See Pan–Pacific & Low Ball Cable Television Co. v. Pacific Union Co.*, 987 F.2d 594, 597 (9th Cir.1993); *Lockary v. Kayfetz*, 974 F.2d 1166, 1178 (9th Cir.1992), cert. denied, 508 U.S. 931, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993).

IT IS SO ORDERED.