**MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, Plaintiff,**

**and**

**Latham & Watkins, Appellant,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY, a corporation; Travelers Indemnity Company, a corporation; Insurance Company of North America, a corporation, Defendants–Appellees.**

**Nos. 96–55091 to 96–55097.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1997.

Decided June 30, 1997.

**1130**

Harvey R. Levine, Levine, Steinberg, & Miller, San Diego, CA; Sarah Kikla Freeman, Latham & Watkins, San Diego, CA, for appellant.

Seth A. Ribner, Coudert Brothers, Los Angeles, CA, for defendants-appellees.

Before: MAGILL,* RYMER, and THOMAS, Circuit Judges.

MAGILL, Senior Circuit Judge:

The law firm of Latham & Watkins (Latham & Watkins), on behalf of its client, Montrose Chemical Corporation of California (Montrose), brought seven causes of action against The Travelers Indemnity Company (Travelers), American Motorists Insurance Company (AMICO), and Insurance Company of North America (INA). In its complaints, Montrose alleged that Travelers, AMICO, and INA had in bad faith failed to defend Montrose against seven underlying environmental damages claims. The district court dismissed Montrose's claims for lack of subject matter jurisdiction. Travelers then brought a motion, pursuant to Federal Rule of Civil Procedure 11(c)(1)(A), seeking sanctions against Montrose. The district court granted Travelers's motion and sanctioned Latham & Watkins. *Montrose Chem. Corp. v. American Motorists Ins. Co.*, 926 F.Supp. 944, 947 (C.D.Cal.1995). Latham & Watkins

appeals the district court's imposition of sanctions. We reverse.

**I.**

Montrose is a Delaware corporation that used to manufacture, among other chemicals, the pesticide DDT. Montrose's manufacturing operations were conducted primarily in California and Nevada. Although Montrose still owns a chemical facility in Nevada that it leases to another corporation, Montrose's main activity for the past decade has been defending itself against environmental damages claims. Because of the liabilities flowing from this litigation, Montrose has become an almost entirely inactive corporation.

The rental income that Montrose receives from its Nevada facility is its only source of operating income. Montrose's only other stream of income comes from financial investments. Both of these activities are managed by Montrose's only officer and only full-time employee, Frank C. Bachman, who works out of Montrose's sole office in Trumbull, Connecticut. The office in Trumbull is also Montrose's sole mailing address.

Travelers, AMICO, and INA are three of Montrose's comprehensive general liability insurance carriers, and the dispute in the present action revolves around the obligation of these insurance companies to provide coverage to Montrose. On August 12, 1994, Montrose filed an action in the United States District Court for the Central District of California, alleging that Travelers, AMICO, and INA had in bad faith failed to defend Montrose in *Brown & Bryant, Inc. v. Great Lakes Chem. Corp.*, Case No. CV–F–92–5068–OWW, an underlying environmental lawsuit. Montrose's action for bad faith failure to defend was assigned to the Honorable William D. Keller, United States District Judge. The very same day that the action was filed, Montrose voluntarily dismissed its suit against Travelers.

Less than one week later, on August 18, 1994, Montrose filed another action against Travelers, AMICO, and INA, again in the

---

* The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

United States District Court for the Central District of California. In this second complaint, Montrose alleged that Travelers, AMICO, and INA had in bad faith failed to defend Montrose in *Alderman v. Cadillac Fairview/California, Inc.*, Case No. BC062039, another underlying environmental action. This second action was randomly assigned to the Honorable David V. Kenyon, United States District Judge. Although the second action, like the previously-dismissed *Brown & Bryant* action, alleged a bad faith failure to defend, the second action's civil cover sheet did not state that the second action was related to the *Brown & Bryant* action.

On Friday, August 26, 1994, one week after filing its second complaint, Montrose filed six additional complaints in the Central District of California, alleging that Travelers, AMICO, and INA had in bad faith failed to defend Montrose in six separate environmental actions. These six bad faith failure to defend claims were randomly assigned to six different judges. Five of these complaints were new, but the sixth was essentially the same *Brown & Bryant* bad faith failure to defend complaint that Montrose had filed and voluntarily dismissed on August 12, 1994. The civil cover sheets for each of these six actions stated that they were related to the August 18 *Alderman* action. Only the civil cover sheet of the refiled *Brown & Bryant* action mentioned the initial August 12 *Brown & Bryant* filing.

In each of the seven complaints filed by Montrose, Montrose alleged federal subject matter jurisdiction based solely upon diversity of citizenship. Montrose pled each defendant's state of incorporation and each defendant's principal place of business. Specifically, Montrose pled that: (1) Travelers is incorporated in Connecticut and that Travelers's principal place of business is Connecticut; (2) AMICO is incorporated in Illinois and that AMICO's principal place of business is Illinois; and (3) INA is incorporated in Pennsylvania and that INA's principal place of business is Pennsylvania. Montrose, however, did not identify its own principal place of business in any of the complaints that it filed with the court. Montrose merely pled that it is incorporated in Delaware.

After the six additional complaints were filed on August 26, 1994, the Clerk of Court, on the Clerk's own initiative, started transferring all six of these actions to Judge Kenyon, who had been assigned the August 18 *Alderman* action. On September 15, 1994, Montrose filed notices of related cases that, like the civil cover sheets for each of its six later-filed complaints, indicated that the six later-filed actions were related to the August 18 filing of the *Alderman* action and should therefore be transferred to Judge Kenyon. In a footnote in each of these notices, Montrose mentioned that the August 12 *Brown & Bryant* action had been previously filed and dismissed.

On October 21, 1994, Travelers and AMICO filed notices of related cases, asserting that all seven of Montrose's complaints should be transferred to Judge Keller who had originally been assigned the August 12 *Brown & Bryant* action. In response to the notices of related cases filed by Travelers and AMICO, Judge Keller, on November 8, 1994, issued an order to the parties to show cause "why these cases should not be transferred to Judge Keller pursuant to Local Rule 4.2.1 and 4.2.2." Civil Mins.-General (Nov. 8, 1994) at 1, *reprinted in* 5 E.R. 36 at 939.[1] Judge Keller, apparently concerned that Montrose had attempted to engage in

1. Local Rule 4.2.1 provides:
   *IMPROPER REFILING OF ACTIONS*—It is not permissible to dismiss and thereafter refile an action for the purpose of obtaining a different judge.
   C.D. Cal. Local R. 4.2.1.
   Local Rule 4.2.2 provides:
   *DUTY ON REFILING OF ACTIONS*—Whenever an action is dismissed by a party or by the Court before judgment and thereafter the same or essentially the same claims, involving the same or essentially the same parties, are alleged in another action, the later-filed action shall be assigned to the judge to whom the first-filed action was assigned. It shall be the duty of every attorney in any such later-filed action to bring those facts to the attention of the Court in the Civil Cover Sheet (JS–44C) and by the filing of a Notice of Related Case(s) pursuant to Local Rule 4.3.1.
   C.D. Cal. Local R. 4.2.2.

some form of "judge shopping" by filing and refiling actions, also ordered "plaintiff's counsel . . . to show cause why Rule 11 sanctions should not be imposed for such violations." *Id.*

After holding a hearing in which Latham & Watkins argued on Montrose's behalf that the seven actions were sufficiently distinct that they could be tried separately, Judge Keller found that Rule 11 sanctions were not warranted. Nevertheless, Judge Keller determined that the seven actions should be consolidated and transferred to him. Montrose subsequently moved to recuse Judge Keller on the ground that his daughter worked for the law firm that represented INA. Judge Keller recused himself, and all seven actions were transferred to Judge Kenyon.

On October 21, 1994, Travelers, AMICO, and INA also filed a motion to dismiss each of Montrose's seven actions for lack of subject matter jurisdiction, arguing that there was not complete diversity of citizenship between the opposing parties. Travelers, AMICO, and INA argued that, because both Travelers and Montrose are citizens of Connecticut, the district court lacked diversity jurisdiction. In response to the motion to dismiss, Montrose filed, on November 7, 1994, an opposition brief in which Montrose claimed that it is a citizen of both Delaware and Nevada, but not Connecticut. Montrose claimed that, because it is incorporated in Delaware, Montrose is a citizen of Delaware and that, because its principal place of business is Nevada, Montrose is also a citizen of Nevada.

On June 20, 1995, the district court dismissed Montrose's actions for lack of subject matter jurisdiction. Order Dismissing Actions (June 20, 1995) at 5, *reprinted in* 7 E.R. 50 at 1554. The district court determined that "Montrose's business activities are threefold: (1) managing investment accounts, (2) supervising lawyers handling their pollution liability and insurance lawsuits, and (3) leasing the Nevada facility." *Id.* at 4, *reprinted in* 7 E.R. 50 at 1553. The district court further determined that "[a]ll of these activities are conducted by Mr. Frank C. Bachman and his small staff, from Mont-

rose's headquarters and sole office in Connecticut." *Id.* at 4–5, *reprinted in* 7 E.R. 50 at 1553–54. The district court concluded that "it is clear that Montrose's principal place of business is Connecticut." *Id.* at 4, *reprinted in* 7 E.R. 50 at 1553. Thus, because Travelers's principal place of business is also Connecticut, the district court held that "the requisite diversity jurisdiction is lacking" and dismissed Montrose's actions. *Id.* at 5, *reprinted in* 7 E.R. 50 at 1554.

On July 27, 1995, in accordance with Federal Rule of Civil Procedure 11(c)(1)(A), Travelers filed with the district court a motion for sanctions against Montrose. In its motion, Travelers argued that Montrose should be sanctioned "because Montrose knowingly filed multiple lawsuits in federal court in an effort to judge shop and forum shop despite an obvious lack of federal subject matter jurisdiction." Mot. for Sanctions (July 27, 1995) at 10 (emphasis and capitalization omitted), *reprinted in* 8 E.R. 56 at 1648. Travelers sought attorney's fees and costs in the amount of $79,239.38 attributable to defending against Montrose's complaints and additional fees and costs in the amount of $52,453.85 attributable solely to its Rule 11 sanctions efforts, for a total request of $131,-693.23. On September 29, 1995, the district court granted Travelers's Rule 11 motion. *Montrose Chem. Corp.*, 926 F.Supp. at 947. However, the district court did not sanction Montrose, as Travelers had requested, but instead imposed sanctions on Montrose's counsel, Latham & Watkins. *See id.*

The district court imposed sanctions on the ground that "Montrose's complaints were frivolous in that Montrose improperly alleged subject matter jurisdiction." *Id.* at 946. In considering Montrose's claim that Montrose's principal place of business is Nevada, the district court concluded that "it is clear that there is no viable argument that Nevada was the principal place of business." *Id.* The district court further stated that "[a] party may be sanctioned for filing a complaint in federal court that the plaintiff must have known lacked a factual foundation for federal court subject matter jurisdiction." *Id.* at 947 (citing *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th

Cir.1986)). Under this standard, the district court held that "Montrose's counsel, at the time it filed the complaints, was or should have been aware of the limited nature of Montrose's contacts with the state of Nevada, and should have known that it could not properly assert the existence of subject matter jurisdiction." *Id.*

In its decision to impose sanctions, the district court also weighed two other factors. First, the district court reasoned that, although Judge Keller determined that Montrose was not guilty of judge-shopping, Montrose's actions in filing numerous complaints without properly notifying the district court of the relationship between the complaints "provide a context in which to evaluate its later failures." *Id.* at 946. Second, the district court determined that "Montrose's failure to initially plead its 'principal place of business' also supports the imposition of sanctions." *Id.* at 947. The district court reasoned that "[t]he experience of Montrose's counsel supports an inference that the failure to plead Montrose's principal place of business was not an inadvertent error, but rather a recognition that the assertion of diversity jurisdiction was frivolous." *Id.*

In granting Travelers's motion, the district court sanctioned Latham & Watkins "in an amount equal to the attorneys' fees expended by Travelers in defending the complaints." *Id.* The district court, however, gave Latham & Watkins leave to dispute the amount of attorneys' fees. *Id.* After Travelers's counsel submitted itemized monthly invoices of its fees and after Latham & Watkins submitted briefs contesting the amount of the award, the district court imposed sanctions on Latham & Watkins in the amount of $71,678.58. *Id.* To arrive at this figure, the district court started with Travelers's request for $79,239.38 in fees and costs attributable to defending against Montrose's complaints and then subtracted $7,560.80 in fees relating to services performed by Travelers's attorneys that turned out to be unnecessary. *Id.* at 947–48. Latham & Watkins now appeals both the district court's decision to impose Rule 11 sanctions and the amount of those sanctions.

## II.

Latham & Watkins argues that the district court abused its discretion in imposing Rule 11 sanctions. We agree.

■ This Court reviews a district court's award of Rule 11 sanctions for abuse of discretion. *Buster v. Greisen,* 104 F.3d 1186, 1189 (9th Cir.1997). Because the district court is "[f]amiliar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 402, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990). However, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of evidence." *Id.* at 405, 110 S.Ct. at 2461.

■ Initially, we note that the district court misstated the standard that should have been applied to Travelers's motion for sanctions. Citing *Orange Production Credit Ass'n v. Frontline Ventures Ltd.,* 792 F.2d 797, 801 (9th Cir.1986), the district court stated that "[a] party may be sanctioned for filing a complaint in federal court that the plaintiff must have known *lacked* a factual foundation for federal court subject matter jurisdiction." *Montrose Chem. Corp.,* 926 F.Supp. at 947 (emphasis added). However, under *Orange Production,* we held that a party "violated Rule 11 by filing a complaint ... which it must have known *completely lacked* a factual foundation for subject matter jurisdiction." 792 F.2d at 801 (emphasis added).

■ Moreover, contrary to the holding of the district court, Montrose's assertion of subject matter jurisdiction in each of its seven causes of action was not frivolous. "Frivolous filings are those that are both [ (1) ] baseless and [ (2) ] made without a reasonable and competent inquiry." *Buster,* 104 F.3d at 1190 (quotations and citation omitted). Consistent with our holding in *Orange Production,* to be baseless, an assertion of subject matter jurisdiction must "completely lack[ ] a factual foundation...." *Orange Production,* 792 F.2d at 801.

Because Montrose's assertion of subject matter jurisdiction meets only the second requirement of the two-part test for frivolous filings, the complaints Latham & Watkins's filed on Montrose's behalf were not frivolous. As a result, the district court's holding that the complaints were frivolous was based on an erroneous view of the law. Thus, the district court necessarily abused its discretion in imposing sanctions against Latham & Watkins for filing frivolous actions. *See Cooter,* 496 U.S. at 405, 110 S.Ct. at 2460–61.[2]

### A.

■ For the district court to have diversity jurisdiction over the seven actions brought by Montrose, the citizenship of Montrose must be different than the citizenship of each of the three defendants. *See Caterpillar Inc. v. Lewis,* —— U.S. ——, ——, 117 S.Ct. 467, 472, 136 L.Ed.2d 437 (1996) (construing 28 U.S.C. § 1332(a) to find a requirement of complete diversity). To identify a corporation's citizenship for purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1) (1994). For this reason, "a corporation is typically a citizen of two states for determining the existence of diversity jurisdiction: the state of incorporation and the state in which it has its principal place of business." *Breitman v. May Co. California,* 37 F.3d 562, 564 (9th Cir.1994).

It is undisputed that Montrose is diverse with respect to both AMICO and INA. In addition, it is undisputed that Montrose and Travelers are diverse with respect to their states of incorporation. Finally, it is undisputed that Travelers's principal place of business is Connecticut. Accordingly, the only potential bar to complete diversity is the district court's conclusion that Montrose's principal place of business is also Connecticut. *See* Order Dismissing Actions at 5, *reprinted in* 7 E.R. 50 at 1554.

■ This Court generally applies "one of two tests to determine in which state a corporation has its principal place of business: the place of operations test and the nerve center test." *Breitman,* 37 F.3d at 564 (citing *Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir.1990)). "Under the place of operations test, a corporation's principal place of business is the state in which it performs a 'substantial predominance' of corporate operations." *Breitman,* 37 F.3d at 564 (citation omitted). Under the nerve center test, "a corporation's principal place of business is the state in which the executive and administrative functions are performed." *Id.* However, "[t]he 'nerve center' test should be used only when no state contains a substantial predominance of the corporation's business activities." *Industrial Tectonics,* 912 F.2d at 1094.

■ In *Industrial Tectonics,* this Court explained further that:

> [O]ne must keep in mind that the purpose of diversity jurisdiction is to avoid the effects of prejudice against outsiders. *Thus, the principal place of business should be the place where the corporation conducts the most activity that is visible and impacts the public,* so that it is least likely to suffer from prejudice against outsiders. Many factors are relevant to de-

---

2. The parties have spent a great deal of effort arguing whether Latham & Watkins impermissibly attempted to select the judge who would hear its seven causes of action. However, Judge Keller's determination that Latham & Watkins should not be sanctioned for judge shopping was never appealed, and as a result, the issue of whether Latham & Watkins engaged in judge shopping on Montrose's behalf is not before us.

Moreover, the district court in the instant case did not sanction Latham & Watkins for judge shopping. Although the district court suspected that Montrose had engaged in judge shopping, the district court did not reject Judge Keller's determination "that Montrose should not be

sanctioned for the misfiled notice" and Judge Keller's finding "that the mistake was due to inadvertence, not an attempt to 'judge shop.'" *Montrose Chem. Corp. v. American Motorists Ins. Co.,* 926 F.Supp. 944, 946 (C.D.Cal.1995). The district court concluded only that the events surrounding the judge-shopping allegation "provide a context in which to evaluate [Montrose's] later failures." *Id.* The district court's imposition of sanctions rests on its determination that Latham & Watkins filed a frivolous suit on behalf of Montrose. *See id.* at 946–47. Accordingly, we do not reach the issue of whether Latham & Watkins should have been sanctioned for judge shopping.

termining the location of the majority of corporate activity and greatest contact with the public. Certainly the location of employees, tangible property, and production activities are relevant factors. Additional relevant factors include the locations where income is earned, purchases are made, and sales take place.

*Id.* (emphasis added) (citations omitted).

■ Because Nevada arguably "contains a substantial predominance of [Montrose's] business activities," *id.,* we apply the place of operations test to determine whether Latham & Watkins's assertion of diversity jurisdiction was baseless. Under this test and under the principles set forth in *Industrial Tectonics,* we hold that Latham & Watkins's assertion of subject matter jurisdiction did not "completely lack[ ] a factual foundation...." *Orange Production,* 792 F.2d at 801.[3]

First, with respect to Montrose's tangible property, ownership of a chemical facility in Nevada that produces rental income is likely more visible than the performance of various administrative functions out of an office in Connecticut. Furthermore, with respect to Montrose's production activities, Nevada is the ultimate source of Montrose's only operating income-the rental income from the Nevada chemical facility. As the ultimate source of its only operating income, Nevada is arguably the site of Montrose's most important "production activity" within the meaning of the *Industrial Tectonics* principles. Finally, with respect to the locations where income is earned, although Montrose collects the rental income in Connecticut and oversees its financial investments from there, its operating income is generated entirely by means of its ownership of the chemical facility in Nevada. Consequently, Latham & Watkins's argument that Nevada is Montrose's principal place of business is not completely without factual foundation. *Cf. Danjaq, S.A. v. Pathe Communications Corp.,* 979 F.2d 772, 776 (9th Cir.1992) (holding that, under the standard enunciat-

ed in *Industrial Tectonics,* California was the principal place of business of a developer and producer of James Bond films because the company's "central figure" made all the arrangements and decisions regarding production of the films in Los Angeles, notwithstanding that Switzerland was where administrative and ministerial duties were performed); *Co–Efficient Energy Sys. v. CSL Indus., Inc.,* 812 F.2d 556, 558 (9th Cir.1987) (holding that an inactive company incorporated in Nevada was a citizen of California at least in part because it had previously bought business energy management systems and created tax shelters in California).

**B.**

■ Turning to the second element of the test for a frivolous filing set forth in *Buster,* we conclude that Latham & Watkins did not make a reasonable and competent inquiry before filing Montrose's seven complaints for bad faith failure to defend. We find it neither reasonable nor competent that, despite having represented Montrose for several years, Latham & Watkins initially failed to plead the citizenship of Montrose. As part of the requirement that an attorney make a reasonable and competent inquiry, we believe it necessary that the attorney make a reasonable and competent inquiry into the content of the complaints that it prepares and files for a client.

In addition, when Travelers moved to dismiss Montrose's complaints for lack of diversity jurisdiction, Latham & Watkins responded by alleging that Montrose is a citizen of Nevada, but cited no case law for this proposition despite the substantial evidence that Montrose's principal place of business is Connecticut. Indeed, although it now faces Rule 11 sanctions, Latham & Watkins still offers scant legal support for its argument that Montrose is a citizen of Nevada.

---

**3.** Because the issue is not before us, we do not reach the question of whether Montrose is a citizen of Nevada for purposes of subject matter jurisdiction. Instead, we merely hold that, under the current law of this Circuit, the assertion that

Montrose is a citizen of Nevada is "a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law...." Fed.R.Civ.P. 11(b)(2).

Nevertheless, Latham & Watkins's initial failure to plead Montrose's citizenship did not provide an independent basis for the imposition of sanctions. In considering Travelers's motion for sanctions, the district court merely looked to Latham & Watkins's initial failure to plead citizenship as additional support for its conclusion that Latham & Watkins's assertion of diversity jurisdiction was frivolous. *See Montrose Chem. Corp.*, 926 F.Supp. at 947 ("Montrose's failure to initially plead its 'principal place of business' also supports the imposition of sanctions.... The experience of Montrose's counsel supports an inference that the failure to plead Montrose's principal place of business was not an inadvertent error, but rather a recognition that the assertion of diversity jurisdiction was frivolous.").

Notwithstanding Latham & Watkins's failure to properly plead Montrose's citizenship, sanctions based solely on this error are not warranted in this case. The district court did not find, nor is there sufficient evidence on the record before us to conclude, that Latham & Watkins's initial failure to plead Montrose's citizenship was the result of "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation...." Fed.R.Civ.P. 11(b)(1). In addition, a party who has failed to allege diversity jurisdiction is ordinarily granted leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a). *See* Fed R. Civ. P. 15(a) ("[L]eave [to amend a party's pleadings] shall be freely given when justice so requires."); *Pioche Mines Consol. Inc. v. Dolman*, 333 F.2d 257, 262 n. 2, 264 (9th Cir.1964) (holding that it was proper for district court to grant leave to amend complaint in order to correct defects in pleading diversity jurisdiction); *accord Sanders v. Clemco Indus.*, 823 F.2d 214, 216–17 (8th Cir.1987) (holding that district court's refusal to grant leave to amend complaint in order to correct defects in pleading diversity jurisdiction was improper). Accordingly, because Latham & Watkins made the type of

technical error that courts traditionally allow parties to correct, it would be improper to impose sanctions solely on this basis.

We thus conclude that the district court's award of Rule 11 sanctions was an abuse of discretion. The factors considered by the district court in awarding sanctions neither individually nor cumulatively support Travelers's motion for Rule 11 sanctions.

### III.

For the foregoing reasons, we reverse.[4]

REVERSED.

---

4. In response to Latham & Watkins's appeal, Travelers filed a motion pursuant to Federal Rule of Appellate Procedure 38 for sanctions against Latham & Watkins. In its motion, Travelers argues that Latham & Watkins should be sanctioned for filing a frivolous appeal. Because the district court's award of Rule 11 sanctions was an abuse of discretion, Latham & Watkins's appeal of that award was not frivolous. Accordingly, we deny Travelers's motion for Rule 38 sanctions.