George DALE, Commissioner of Insurance for the State of Mississippi, in His Official Capacity as Receiver of Franklin Protective Life Insurance Company, et al. Plaintiffs

v.

FIRST AMERICAN NATIONAL BANK, Now Known as AmSouth Bank, and First Tennessee Bank Defendants

No. CIV.A.3:02 CV 1462LN.

United States District Court, S.D. Mississippi, Jackson Division.

May 12, 2005.

Sam S. Thomas, Underwood Thomas, P.C., Jackson, MS, Charles Greg Copeland, Robert C. Richardson, Copeland, Cook, Taylor & Bush, Ridgeland, MS, Alvin L. Harris, William B. Hubbard, Weed, Hubbard, Berry & Doughty, PLLC, Nashville, TN, for Plaintiffs.

Paul N. Davis, John Adam Crawford, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Robert E. Hauberg, Jr., Susan L. Roberts, William Davis Frye, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, MS, R. Mark Glover, Eugene J. Podesta, Jr., Leo M. Bearman, Jr., R. Alan Pritchard, Jr., Baker, Donelson, Bearman & Caldwell, Memphis, TN, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiffs to remand pursuant to 28 U.S.C. § 1447, and a motion by plaintiffs to strike defendants' supplemental notice of removal. Defendants First American National Bank, now known as AmSouth Bank (AmSouth), and First Tennessee Bank have responded in opposition to the motions and the court, having considered the memoranda of authorities submitted by the parties, concludes that the motion to remand should be denied.

This case was originally filed in the Circuit Court of Hinds County, Mississippi on July 31, 2002 by the Commissioners of Insurance for five states, including Mississippi, Tennessee, Missouri, Oklahoma and Arkansas, in their capacities as receivers for a number of insurance companies allegedly defrauded of millions of dollars pursuant to a scheme devised and implemented by Martin Frankel and others. The Receivers brought this action against AmSouth, a national banking corporation organized under the laws of Alabama and with its principal place of business in Alabama, and against First Tennessee Bank, a national banking organization organized and existing under the laws of the United States, with its principal place of business in Tennessee, alleging, *inter alia,* that as a result of negligence on the part of AmSouth and First Tennessee (the Banks),

money looted from the insurance companies was laundered through accounts maintained at the Banks.

Although the complaint plainly identified the Tennessee Receiver and First Tennessee as citizens of Tennessee, so that it facially appeared that there was incomplete diversity of citizenship, AmSouth removed the case on September 5, 2002 on the basis of diversity jurisdiction, contending that either First Tennessee had been fraudulently joined or that plaintiffs' claims against AmSouth were fraudulently misjoined with the claims against First Tennessee. On October 7, 2002, plaintiffs filed their motion to remand.

Prior to the Receivers' filing the present action, and in the midst of settlement negotiations between the parties, the defendant Banks filed their own separate declaratory judgment actions in the United States District Court for the Middle District of Tennessee, seeking an adjudication that they were not liable on any of the claims the Receivers were proposing to bring against them (the nature of which had been disclosed to the Banks during the settlement negotiations), styled *Amsouth Bank, et al. v. George Dale, et al.,* No. 3:02–0677 (M.D.Tenn). On March 21, 2003, the Tennessee District Court denied a motion by the Receivers to dismiss that action, and contemporaneously enjoined the Receivers from further pursuing this action. Upon receiving notice of that order, this court stayed the present action, and moved the case from the court's active docket to its inactive docket. Subsequently, however, on appeal of the Tennessee District Court's order, the Sixth Circuit reversed the district court by order entered September 21, 2004, holding that not only had the Tennessee District Court erred in its analysis of the merits of the Banks' request for declaratory relief but that the court had "abused its discretion in

assuming jurisdiction over these declaratory actions," because, *inter alia,* "the filing of these declaratory actions was an effort to engage in procedural fencing to secure the Banks' choice of forum." *AmSouth Bank v. Dale,* 386 F.3d 763, 776 (6th Cir. 2004). Thus, consistent with the Sixth Circuit's mandate on remand, the Tennessee District Court dismissed the Banks' declaratory judgment actions.

In the wake of that dismissal, this court reinstated this case to the court's active docket, which brought the motion to remand back before the court for consideration. However, events that had occurred in the meantime placed a new light on the motion, for while the Banks' Tennessee action was pending on appeal to the Sixth Circuit, the Tennessee Receiver reached an agreement with the Banks to dismiss her claims against them, and the Tennessee Receiver was both dismissed as a defendant in the Tennessee declaratory judgment action and she voluntarily dismissed her claims in this case, resulting in this court's entry on June 26, 2003 of an agreed final judgment of dismissal of the Tennessee Receiver's claims in this cause. This turn of events led the Banks to file a supplemental notice of removal on July 13, 2003 on the basis that complete diversity of citizenship now exists among all the parties, supporting this court's exercise of diversity jurisdiction without regard to issues of fraudulent joinder and/or misjoinder. Specifically, they asserted that "complete diversity now exists among the Plaintiffs and the Defendants without requiring the Court to conduct a fraudulent joinder analysis." The parties have thus presented for consideration the question whether a lack of subject matter jurisdiction at the time of removal owing to incomplete diversity of citizenship is excused by the fact that complete diversity of citizenship now exists?[1]

1. Although the issue does become relevant

*infra,* the court's immediate analysis assumes,

The path leading to the answer to this question begins, and in the court's opinion, ultimately ends, as well, with *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). There, the case was removed to a federal court at a time when complete diversity of citizenship did not exist among the parties. Although the plaintiff timely moved to remand, the district court denied the motion. Before the case came to trial, however, the claims involving the nondiverse defendant were settled and it was dismissed as a party to the case, following which complete diversity existed. The case proceeded to trial, which resulted in a jury verdict and judgment for the removing defendant. The Sixth Circuit vacated the judgment, concluding that since there was no complete diversity *at the time of removal,* the district court lacked subject matter jurisdiction. The Supreme Court reversed, concluding that the eventual dismissal of the nondiverse defendant overcame the district court's initial misjudgment. 519 U.S. at 70, 117 S.Ct. at 473.

Caterpillar maintained that while complete diversity did not exist at the time of removal, as required by 28 U.S.C. § 1441(a),[2] the subsequent dismissal of the nondiverse defendant prior to trial "cured the threshold *statutory* misstep, i.e., the removal of a case when diversity was incomplete." *Id.* at 73, 117 S.Ct. at 475. The Court responded, stating,

> for the sake of argument, that subject matter jurisdiction was lacking at the time of removal. The parties requested that they be permitted to brief the issue of the jurisdictional effect of the dismissal of the Tennessee Receiver's claims, and to address the original issues of joinder/misjoinder only if the court concludes that jurisdiction is otherwise lacking.

**2.** This is the general removal statute, which provides, in relevant part, as follows:

Caterpillar moves too quickly over the terrain we must cover. The *jurisdictional* defect was cured, i.e., complete diversity was established before the trial commenced. Therefore, the Sixth Circuit erred in resting its decision on the absence of subject-matter jurisdiction. But a statutory flaw—Caterpillar's failure to meet the § 1441(a) requirement that the case be fit for federal adjudication at the time the removal petition is filed—remained in the unerasable history of the case.

*Id.* Moreover, the Court observed, the plaintiff, in timely seeking remand, had done "all that was required to preserve his objection to removal." *Id.* There was thus at least some merit to his argument that "ultimate satisfaction of the subject-matter jurisdiction requirement ought not swallow up antecedent statutory violations." *Id.,* 117 S.Ct. at 475–76. However, this position, the Court observed,

> [ran] up against an overriding consideration. Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), considerations of finality, efficiency, and economy become overwhelming,

*Id.,* 117 S.Ct. at 476. The Court emphasized this theme of finality and judicial economy, stating,

> Despite a federal trial court's threshold denial of a motion to remand, if, at the

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated. See Fed. Rule Civ. Proc. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Finn,* 341 U.S. at 18, 71 S.Ct. at 542. In this case, however, no jurisdictional defect lingered through judgment in the District Court. To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice.

*Id.* at 76–77, 117 S.Ct. at 477.

*Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004), presented the question "whether a party's post-filing change in citizenship can cure a lack of subject-matter jurisdiction that existed at the time of filing in an action premised upon diversity of citizenship." 124 S.Ct. at 1922. The Court concluded that it did not, and that the case should therefore have been remanded. In *Grupo,* a Texas limited partnership, Atlas, filed suit in a Texas federal court against Grupo Dataflux, a Mexican corporation, asserting jurisdiction based on diversity of citizenship. *Id.* Following nearly three years of discovery and motions, a six-day jury trial resulted in a $750,000 verdict in the plaintiff's favor. *Id.* at 1923. Prior to entry of a judgment, however, the defendant moved to dismiss for lack of subject matter jurisdiction, as-

serting that because two of the Atlas partners were citizens of Mexico at the time the suit was filed, Atlas was considered a Mexican citizen and therefore, the parties were not of diverse citizenship at the time of filing. *Id.* The district court agreed and granted the motion. *Id.* On appeal, Atlas acknowledged the lack of diversity at the time of filing, but advised that diversity did exist at the time of the trial and jury verdict because the Mexican partners had left the partnership a month before the trial. The Fifth Circuit concluded that since diversity existed when the jury rendered its verdict, dismissal was inappropriate. The Supreme Court reversed, concluding that the change of citizenship did not cure the jurisdictional defect that had existed at the time the suit was filed and that accordingly, the considerations of economy, efficiency and finality identified in *Caterpillar* could not justify a departure from the time-of-filing rule. *Id.* at 1930.

In reaching this conclusion, the Court focused on the distinction between jurisdictional defects and statutory defects alluded to by *Caterpillar.* On the one hand, the Court explained, the jurisdictional defect in *Caterpillar,* i.e., the lack of complete diversity of citizenship, had been cured by dismissal of the nondiverse defendant. On the other hand, the statutory defect, i.e., the lack of complete diversity *at the time of removal,* could not be "cured." That defect was, however, overwhelmed and hence overcome by "considerations of finality, efficiency, and economy." *Id.* at 1925. In contrast, the jurisdictional defect in *Grupo* was not cured, because it had long been the case that a post-filing change in a party's citizenship does not create diversity jurisdiction.[3] *Id.*

---

**3.** The Court stated,

The purported cure arose not from a change in the parties to the action, but from a change of the citizenship of a continuing party. Withdrawal of the Mexican partners from Atlas did not change the fact that Atlas, the single artificial entity created under Texas law, remained a party to the

action. True, the composition of the partnership changed, and consequently its citizenship, changed. But allowing a citizenship change to cure the jurisdictional defect that existed at the time of filing would contravene the principle [that "jurisdiction depending on the condition of the party is

In its recent decision in *Positive Black Talk Inc. v. Cash Money Records Inc.*, the Fifth Circuit highlighted this jurisdictional/statutory distinction, writing of *Caterpillar* that

> although the substantive requirement of complete diversity was ultimately satisfied [in *Caterpillar* ], the timing requirement was not. However, because of judicial economy and finality concerns, the Court excused the failure to comply with the timing element of the statute.

394 F.3d 357, 367 (5th Cir.2004). At issue in *Positive Black Talk*, a copyright infringement case, was the ultimate jurisdictional effect of the plaintiff's failure to comply with a statutory requirement that a registration application be received by the Copyright Office before an infringement lawsuit is filed. Although the application was received by the Copyright Office four days after the suit was filed, the defendants, after nearly a year of litigation, moved to dismiss for lack of subject matter jurisdiction based on plaintiff's having filed suit before the Copyright Office received the application. *Id.* at 364. The district court denied the motion, concluding that the defect had been cured and that dismissing the case after a year of litigation, only to have the plaintiff refile the suit, would be a tremendous waste of judicial resources. *Id.* The case proceeded to trial, where the jury found in favor of the defendants. *Id.* On appeal, the Fifth Circuit affirmed the retention of jurisdiction. The plaintiff had satisfied the substantive requirement of the statute, i.e., filing its application with the Copyright Office, before final judgment; and although it had failed to meet the timing requirement, the court stated that " 'considerations of finality, efficiency and economy' counsel us to disregard the technical defect in timing in this particular case." *Id.* at 367.

In the case at bar, the jurisdictional defect has been cured by dismissal of the Tennessee Receiver's claims against the defendant Banks. The question is whether the considerations identified in *Caterpillar* justify excusing the statutory defect. Finality considerations are obviously nonexistent here. Yet the posture of the case creates efficiency and economy concerns that the court concludes warrants disregard of the statutory defect in the removal. To the point, at the time this case was stayed as a result of the Tennessee District Court's injunction, the parties had just commenced remand-related discovery pertinent, presumably, to the fraudulent joinder/misjoinder issues. The parties have indicated that in the event the court were to conclude that the fact that there is now complete diversity of citizenship does not permit its exercise of jurisdiction, the parties would need to recommence remand-related discovery, following the completion of which they would need to brief the fraudulent joinder/misjoinder issues, all so that the court could then decide whether claims that are no longer a part of the case were arguably viable when the case was filed and whether claims asserted by a party who is no longer a party were properly a part of the case when the case was filed. This strikes the court as a wasteful exercise in which the court need not engage itself given the fact that complete diversity of citizenship now exists among the parties.[4]

---

governed by that condition, as it was at the commencement of the suit."].

*Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 124 S.Ct. 1920, 1926, 158 L.Ed.2d 866 (2004) (citation omitted). At bottom, *Grupo* stands for the proposition that a post-filing change of citizenship does not cure a jurisdictional defect, but elimination of a nondiverse party does.

4. The court would note, too, that if it were to proceed in this manner and ultimately determine that jurisdiction was lacking at the time of removal resulting in an order remanding the case, defendants would arguably be in a

For these reasons, the court concludes that the motion to remand should be denied, as should plaintiffs' related motion to strike defendants' supplemental notice of removal.

position to immediately re-remove the case on the very basis they presently urge for retention of jurisdiction, i.e., complete diversity of citizenship, for it might be argued that a second removal is both permissible, *see S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir.1996) (stating that while a defendant is precluded from seeking a second removal on the same ground once a case is remanded, "The prohibition against removal 'on the same ground' does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the case removable."), and timely, despite the one-year time limit on diversity removals, *cf. Tedford v. Warner–Lambert Co.*, 327 F.3d 423, 426 (5th Cir.2003)(holding that time limit for removal "is merely modal and formal and may be waived," and that one-year time limit is subject to equitable tolling). Such a scenario, though hypothetical, is certainly fairly predictable; and while the court would not presume to predict the outcome, the prospect of even further litigation over jurisdiction which is not currently substantively defective lends even more weight to efficiency and economy concerns that, in the court's view, already outweigh the statutory defect.