# CATERPILLAR INC. *v.* LEWIS

No. 95–1263.   Argued November 12, 1996—Decided December 10, 1996

62

*Kenneth S. Geller* argued the cause for petitioner. With him on the briefs were *Michael R. Feagley, John E. Muench, Charles Rothfeld, Leslie W. Morris II, James B. Buda,* and *William F. Maready.*

*Leonard J. Stayton* argued the cause for respondent. With him on the brief were *Paul Alan Levy* and *Alan B. Morrison.**

JUSTICE GINSBURG delivered the opinion of the Court.

This case, commenced in a state court, involves personal injury claims arising under state law. The case was removed to a federal court at a time when, the Court of Appeals concluded, complete diversity of citizenship did not exist among the parties. Promptly after the removal, the plaintiff moved to remand the case to the state court, but the District Court denied that motion. Before trial of the case, however, all claims involving the nondiverse defendant were settled, and that defendant was dismissed as a. party to the action. Complete diversity thereafter existed. The case proceeded to trial, jury verdict, and judgment for the removing defendant. The Court of Appeals vacated the judgment, concluding that, absent complete diversity at the time of removal, the District Court lacked subject-matter jurisdiction.

The question presented is whether the absence of complete diversity at the time of removal is fatal to federal-court adjudication. We hold that a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered.

I

Respondent James David Lewis, a resident of Kentucky, filed this lawsuit in Kentucky state court on June 22, 1989, after sustaining injuries while operating a bulldozer. Asserting state-law claims based on defective manufacture, negligent maintenance, failure to warn, and breach of war-

---

*Patrick W. Lee* filed a brief for the Product Liability Advisory Council, Inc., as *amicus curiae* urging reversal.

ranty, Lewis named as defendants both the manufacturer of the bulldozer—petitioner Caterpillar Inc., a Delaware corporation with its principal place of business in Illinois—and the company that serviced the bulldozer—Whayne Supply Company, a Kentucky corporation with its principal place of business in Kentucky.

Several months later, Liberty Mutual Insurance Group, the insurance carrier for Lewis' employer, intervened in the lawsuit as a plaintiff. A Massachusetts corporation with its principal place of business in that State, Liberty Mutual asserted subrogation claims against both Caterpillar and Whayne Supply for workers' compensation benefits Liberty Mutual had paid to Lewis on behalf of his employer.

Lewis entered into a settlement agreement with defendant Whayne Supply less than a year after filing his complaint. Shortly after learning of this agreement, Caterpillar filed a notice of removal, on June 21, 1990, in the United States District Court for the Eastern District of Kentucky. Grounding federal jurisdiction on diversity of citizenship, see 28 U. S. C. § 1332, Caterpillar satisfied with only a day to spare the statutory requirement that a diversity-based removal take place within one year of a lawsuit's commencement, see 28 U. S. C. § 1446(b). Caterpillar's notice of removal explained that the case was nonremovable at the lawsuit's start: Complete diversity was absent then because plaintiff Lewis and defendant Whayne Supply shared Kentucky citizenship. App. 31. Proceeding on the understanding that the settlement agreement between these two Kentucky parties would result in the dismissal of Whayne Supply from the lawsuit, Caterpillar stated that the settlement rendered the case removable. Id., at 31–32.

Lewis objected to the removal and moved to remand the case to state court. Lewis acknowledged that he had settled his own claims against Whayne Supply. But Liberty Mutual had not yet settled its subrogation claim against Whayne Supply, Lewis asserted. Whayne Supply's presence as a de-

fendant in the lawsuit, Lewis urged, defeated diversity of citizenship. *Id.*, at 36. Without addressing this argument, the District Court denied Lewis' motion to remand on September 24, 1990, treating as dispositive Lewis' admission that he had settled his own claims against Whayne Supply. *Id.*, at 55.

Discovery, begun in state court, continued in the now federal lawsuit, and the parties filed pretrial conference papers beginning in July 1991. In June 1993, plaintiff Liberty Mutual and defendant Whayne Supply entered into a settlement of Liberty Mutual's subrogation claim, and the District Court dismissed Whayne Supply from the lawsuit. With Caterpillar as the sole defendant adverse to Lewis,[1] the case pro-

---

[1] In accord with 28 U. S. C. §1367 and Rule 14 of the Federal Rules of Civil Procedure, Caterpillar, after removing the case to federal court, impleaded Lewis' employer, Gene Wilson Enterprises, a Kentucky corporation, as a third-party defendant. See App. 2. Gene Wilson Enterprises, so far as the record shows, remained a named third-party defendant, adverse solely to third-party plaintiff Caterpillar, through judgment. See Brief for Respondent 5. No dispute ran between Lewis and his employer, and Caterpillar's third-party complaint against Gene Wilson Enterprises had no bearing on the authority of the federal court to adjudicate the diversity claims Lewis asserted against Caterpillar. See, *e. g., Wichita Railroad & Light Co.* v. *Public Util. Comm'n of Kan.*, 260 U. S. 48, 54 (1922) (federal jurisdiction once acquired on the ground of complete diversity of citizenship is unaffected by the subsequent intervention "of a party whose presence is not essential to a decision of the controversy between the original parties"). As elaborated in 3 J. Moore, Moore's Federal Practice ¶ 14.26, p. 14–116 (2d ed. 1996) (footnotes omitted): "Once federal subject matter jurisdiction is established over the underlying case between [plaintiff] and [defendant], the jurisdictional propriety of each additional claim is to be assessed individually. Thus, assuming that jurisdiction is based upon diversity of citizenship between [plaintiff] and [defendant], the question concerning impleader is whether there is a jurisdictional basis for the claim by [defendant] against [third-party defendant]. The fact that [plaintiff] and [third-party defendant] may be co-citizens is completely irrelevant. Unless [plaintiff] chooses to amend his complaint to assert a claim against [third-party defendant], [plaintiff] and [third-party defend-

ceeded to a six-day jury trial in November 1993, ending in a unanimous verdict for Caterpillar. The District Court entered judgment for Caterpillar on November 23, 1993, and denied Lewis' motion for a new trial on February 1, 1994.

On appeal, the Court of Appeals for the Sixth Circuit accepted Lewis' argument that, at the time of removal, Whayne Supply remained a defendant in the case due to Liberty Mutual's subrogation claim against it. App. to Pet. for Cert. 8a. Because the party lineup, on removal, included Kentucky plaintiff Lewis and Kentucky defendant Whayne Supply, the Court of Appeals observed that diversity was not complete when Caterpillar took the case from state court to federal court. *Id.*, at 8a–9a. Consequently, the Court of Appeals concluded, the District Court "erred in denying [Lewis'] motion to remand this case to the state court for lack of subject matter jurisdiction." *Id.*, at 9a. That error, according to the Court of Appeals, made it necessary to vacate the District Court's judgment. *Ibid.*[2]

Caterpillar petitioned for this Court's review. Caterpillar stressed that the nondiverse defendant, Whayne Supply, had been dismissed from the lawsuit prior to trial. It was therefore improper, Caterpillar urged, for the Court of Appeals to vacate the District Court's judgment—entered after several years of litigation and a six-day trial—on account of a jurisdictional defect cured, all agreed, by the time of trial and judgment. Pet. for Cert. 8. We granted certiorari, 517 U. S. 1133 (1996), and now reverse.

II

The Constitution provides, in Article III, §2, that "[t]he judicial Power [of the United States] shall extend . . . to Con-

ant] are simply not adverse, and there need be no basis of jurisdiction between them."

[2] Because the Court of Appeals held the District Court lacked jurisdiction over the case, it did not reach several other issues Lewis raised on appeal. See App. to Pet. for Cert. 2a, 9a, n. 3.

troversies . . . between Citizens of different States." Commencing with the Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78, Congress has constantly authorized the federal courts to exercise jurisdiction based on the diverse citizenship of parties. In *Strawbridge* v. *Curtiss*, 3 Cranch 267 (1806), this Court construed the original Judiciary Act's diversity provision to require complete diversity of citizenship. *Id.*, at 267. We have adhered to that statutory interpretation ever since. See *Carden* v. *Arkoma Associates*, 494 U. S. 185, 187 (1990). The current general-diversity statute, permitting federal district court jurisdiction over suits for more than $50,000 "between . . . citizens of different States," 28 U. S. C. § 1332(a), thus applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant.[3]

When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, 28 U. S. C. § 1441(a), provided that no defendant "is a citizen of the State in which such action is brought," § 1441(b).[4] In a

---

[3] This "complete diversity" interpretation of the general-diversity provision is a matter of statutory construction. "Article III poses no obstacle to the legislative extension of federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens." *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U. S. 523, 531 (1967).

[4] In relevant part, 28 U. S. C. § 1441 provides:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and

case not originally removable, a defendant who receives a pleading or other paper indicating the postcommencement satisfaction of federal jurisdictional requirements—for example, by reason of the dismissal of a nondiverse party—may remove the case to federal court within 30 days of receiving such information. § 1446(b). No case, however, may be removed from state to federal court based on diversity of citizenship "more than 1 year after commencement of the action." *Ibid.*[5]

Once a defendant has filed a notice of removal in the federal district court, a plaintiff objecting to removal "on the basis of any defect in removal procedure" may, within 30 days, file a motion asking the district court to remand the case to state court. § 1447(c). This 30-day limit does not apply, however, to jurisdictional defects: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Ibid.*[6]

---

served as defendants is a citizen of the State in which such action is brought."

[5] In full, 28 U. S. C. § 1446(b) provides:

"The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action."

[6] In relevant part, 28 U. S. C. § 1447(c) provides:

"A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case

## III

We note, initially, two "givens" in this case as we have accepted it for review. First, the District Court, in its decision denying Lewis' timely motion to remand, incorrectly treated Whayne Supply, the nondiverse defendant, as effectively dropped from the case prior to removal. See App. 55. Second, the Sixth Circuit correctly determined that the complete diversity requirement was not satisfied at the time of removal. App. to Pet. for Cert. 8a–9a.[7] We accordingly home in on this question: Does the District Court's initial misjudgment still burden and run with the case, or is it overcome by the eventual dismissal of the nondiverse defendant?

Petitioner Caterpillar relies heavily on our decisions in *American Fire & Casualty Co.* v. *Finn,* 341 U. S. 6 (1951), and *Grubbs* v. *General Elec. Credit Corp.,* 405 U. S. 699 (1972), urging that these decisions "long ago settled the proposition that remand to the state court is unnecessary even if jurisdiction did not exist at the time of removal, so long as the district court had subject matter jurisdiction at the time of judgment." Brief for Petitioner 8–9. Caterpillar is right that *Finn* and *Grubbs* are key cases in point and tend in Caterpillar's favor. Each suggests that the existence of subject-matter jurisdiction at time of judgment may shield a judgment against later jurisdictional attack. But neither decision resolves dispositively a controversy of the kind we face, for neither involved a plaintiff who moved

---

shall be remanded. . . . The State court may thereupon proceed with such case."

[7] Caterpillar's petition for certiorari raised the question whether the subrogation claim asserted by Liberty Mutual, and thus the citizenship of Whayne Supply, should be disregarded for purposes of determining diversity of citizenship, in view of the settlement agreed upon between Lewis and Whayne Supply. See Pet. for Cert. i, 18–23. Our order granting review did not encompass that question, see 517 U. S. 1133 (1996), and we express no opinion on it.

promptly, but unsuccessfully, to remand a case improperly removed from state court to federal court, and then challenged on appeal a judgment entered by the federal court.

In *Finn*, two defendants removed a case to federal court on the basis of diversity of citizenship. 341 U. S., at 7–8. Eventually, final judgment was entered for the plaintiff against one of the removing defendants. *Id.*, at 8. The losing defendant urged on appeal, and before this Court, that the judgment could not stand because the requisite diversity jurisdiction, it turned out, existed neither at the time of removal nor at the time of judgment. Agreeing with the defendant, we held that the absence of federal jurisdiction at the time of judgment required the Court of Appeals to vacate the District Court's judgment. *Id.*, at 17–18.[8]

*Finn*'s holding does not speak to the situation here, where the requirement of complete diversity was satisfied at the time of judgment. But Caterpillar points to well-known dicta in *Finn* more helpful to its cause. "There are cases," the Court observed, "which uphold judgments in the district courts even though there was no right to removal." *Id.*, at 16.[9] "In those cases," the *Finn* Court explained, "the federal trial court would have had original jurisdiction of the

---

[8] The Court left open in *Finn* the question whether, on remand to the District Court, "a new judgment [could] be entered on the old verdict without a new trial" if the nondiverse defendant were dismissed from the case. 341 U. S., at 18, n. 18. In the litigation's second round, the District Court allowed the plaintiff to dismiss all claims against the nondiverse defendant. See *Finn* v. *American Fire & Casualty Co.*, 207 F. 2d 113, 114 (CA5 1953), cert. denied, 347 U. S. 912 (1954). Thereafter, the District Court granted a new trial, on the assumption that the original judgment could not stand for lack of jurisdiction. See 207 F. 2d, at 114. Ultimately, the Court of Appeals for the Fifth Circuit set aside the judgment entered after the second trial and ordered the original judgment reinstated. *Id.*, at 117.

[9] The Court cited *Baggs* v. *Martin*, 179 U. S. 206 (1900), and three lower federal-court cases. *Finn*, 341 U. S., at 16, n. 14.

controversy had it been brought in the federal court in the posture it had at the time of the actual trial of the cause or of the entry of the judgment." *Ibid.*

The discussion in *Finn* concentrated on cases in which courts held *removing defendants* estopped from challenging final judgments on the basis of removal errors. See *id.*, at 17. The *Finn* Court did not address the situation of a plaintiff such as Lewis, who chose a state court as the forum for his lawsuit, timely objected to removal before the District Court, and then challenged the removal on appeal from an adverse judgment.

In *Grubbs*, a civil action filed in state court was removed to federal court on the petition of the United States, which had been named as a party defendant in a "cross-action" filed by the original defendant. 405 U. S., at 700–701; see 28 U. S. C. § 1444 (authorizing removal of actions brought against the United States, pursuant to 28 U. S. C. § 2410, with respect to property on which the United States has or claims a lien). No party objected to the removal before trial or judgment. See *Grubbs*, 405 U. S., at 701. The Court of Appeals nonetheless held, on its own motion, that the "interpleader" of the United States was spurious, and that removal had therefore been improper under 28 U. S. C. § 1444. See *Grubbs*, 405 U. S., at 702. On this basis, the Court of Appeals concluded that the District Court's judgment should be vacated and the case remanded to state court. See *ibid.*

This Court reversed. *Id.*, at 700. We explained:

> "Longstanding decisions of this Court make clear . . . that where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." *Id.*, at 702.

We concluded that, "whether or not the case was properly removed, the District Court did have jurisdiction of the parties at the time it entered judgment." *Id.*, at 700. "Under such circumstances," we held, "the validity of the removal procedure followed *may not be raised for the first time on appeal*." *Ibid.* (emphasis added). *Grubbs* instructs that an erroneous removal need not cause the destruction of a final judgment, if the requirements of federal subject-matter jurisdiction are met at the time the judgment is entered. *Grubbs*, however, dealt with a case removed without objection. The decision is not dispositive of the question whether a plaintiff, who timely objects to removal, may later successfully challenge an adverse judgment on the ground that the removal did not comply with statutory prescriptions.

Beyond question, as Lewis acknowledges, there was in this case complete diversity, and therefore federal subject-matter jurisdiction, at the time of trial and judgment. See Brief for Respondent 18–19 (diversity became complete "when Liberty Mutual settled its subrogation claim with Whayne Supply and the latter was formally dismissed from the case"). The case had by then become, essentially, a two-party lawsuit: Lewis, a citizen of Kentucky, was the sole plaintiff; Caterpillar, incorporated in Delaware with its principal place of business in Illinois, was the sole defendant Lewis confronted. Caterpillar maintains that this change cured the threshold *statutory* misstep, *i. e.*, the removal of a case when diversity was incomplete. Brief for Petitioner 7, 13.

Caterpillar moves too quickly over the terrain we must cover. The *jurisdictional* defect was cured, *i. e.*, complete diversity was established before the trial commenced. Therefore, the Sixth Circuit erred in resting its decision on the absence of subject-matter jurisdiction. But a statutory flaw—Caterpillar's failure to meet the § 1441(a) requirement that the case be fit for federal adjudication at the time the removal petition is filed—remained in the unerasable history of the case.

And Lewis, by timely moving for remand, did all that was required to preserve his objection to removal. An order denying a motion to remand, "standing alone," is "[o]bviously . . . not final and [immediately] appealable" as of right. *Chicago, R. I. & P. R. Co.* v. *Stude,* 346 U. S. 574, 578 (1954). Nor is a plaintiff required to seek permission to take an interlocutory appeal pursuant to 28 U. S. C. § 1292(b) [10] in order to avoid waiving whatever ultimate appeal right he may have.[11] Indeed, if a party had to invoke § 1292(b) in order to preserve an objection to an interlocutory ruling, litigants would be obliged to seek § 1292(b) certifications constantly. Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for "'exceptional'" cases while generally retaining for the federal courts a firm final judgment rule. *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 475 (1978) (quoting *Fisons, Ltd.* v. *United States,* 458 F. 2d 1241, 1248 (CA7), cert. denied, 405 U. S. 1041 (1972)).

Having preserved his objection to an improper removal, Lewis urges that an "all's well that ends well" approach is inappropriate here. He maintains that ultimate satisfaction of the subject-matter jurisdiction requirement ought not swallow up antecedent statutory violations. The course Caterpillar advocates, Lewis observes, would disfavor diligent plaintiffs who timely, but unsuccessfully, move to check improper removals in district court. Further, that course would allow improperly removing defendants to profit from

---

[10] Section 1292(b) provides for interlocutory appeals from otherwise not immediately appealable orders, if conditions specified in the section are met, the district court so certifies, and the court of appeals exercises its discretion to take up the request for review.

[11] On brief, Caterpillar argued that "Lewis effectively waived his objection to removal by failing to seek an immediate appeal of the district court's refusal to remand." Brief for Petitioner 13. We reject this waiver argument, though we recognize that it has attracted some support in Court of Appeals opinions. See, *e. g., Able* v. *Upjohn Co.,* 829 F. 2d 1330, 1333–1334 (CA4 1987), cert. denied, 485 U. S. 963 (1988).

their disregard of Congress' instructions, and their ability to lead district judges into error.

Concretely, in this very case, Lewis emphasizes, adherence to the rules Congress prescribed for removal would have kept the case in state court. Only by removing prematurely was Caterpillar able to get to federal court inside the one-year limitation set in § 1446(b).[12] Had Caterpillar waited until the case was ripe for removal, i. e., until Whayne Supply was dismissed as a defendant, the one-year limitation would have barred the way,[13] and plaintiff's choice of forum would have been preserved.[14]

These arguments are hardly meritless, but they run up against an overriding consideration. Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), considerations of finality, efficiency, and economy become overwhelming.

Our decision in *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U. S. 826 (1989), is instructive in this regard. *Newman-Green* did not involve removal, but it did involve the federal

---

[12] Congress amended § 1446(b) in 1988 to include the one-year limitation in order to "reduc[e] the opportunity for removal after substantial progress has been made in state court." H. R. Rep. No. 100–889, p. 72 (1988).

[13] On appeal, Lewis raised only the absence of diversity. He did not refer to the one-year limitation prior to his brief on the merits in this Court. See Tr. of Oral Arg. 17, 30–31. Under this Court's Rule 15.2, a nonjurisdictional argument not raised in a respondent's brief in opposition to a petition for a writ of certiorari "may be deemed waived." Under the facts of this case, however, addressing the implications of § 1446(b)'s one-year limitation is "'predicate to an intelligent resolution' of the question presented." *Ohio* v. *Robinette, ante*, at 38 (quoting *Vance* v. *Terrazas*, 444 U. S. 252, 258–259, n. 5 (1980)). We therefore regard the issue as one "fairly included" within the question presented. This Court's Rule 14.1. The parties addressed the issue in their briefs and at oral argument, and we exercise our discretion to decide it.

[14] Lewis preferred state court to federal court based on differences he perceived in, *inter alia*, the state and federal jury systems and rules of evidence. See Brief for Respondent 22–23.

courts' diversity jurisdiction and a party defendant whose presence, like Whayne Supply's in this case, blocked complete diversity. *Newman-Green* proceeded to summary judgment with the jurisdictional flaw—the absence of complete diversity—undetected. See *id.*, at 828–829. The Court of Appeals noticed the flaw, invited the parties to address it, and, en banc, returned the case to the District Court "to determine whether it would be prudent to drop [the jurisdiction spoiler] from the litigation." *Id.*, at 830. We held that the Court of Appeals itself had authority "to dismiss a dispensable nondiverse party," although we recognized that, ordinarily, district courts are better positioned to make such judgments. *Id.*, at 837–838. , "[R]equiring dismissal after years of litigation," the Court stressed in *Newman-Green*, "would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." *Id.*, at 836. The same may be said of the remand to state court Lewis seeks here. Cf. *Knop* v. *McMahan*, 872 F. 2d 1132, 1139, n. 16 (CA3 1989) ("To permit a case in which there is complete diversity throughout trial to proceed to judgment and then cancel the effect of that judgment and relegate the parties to a new trial in a state court because of a brief lack of complete diversity at the beginning of the case would be a waste of judicial resources.").

Our view is in harmony with a main theme of the removal scheme Congress devised. Congress ordered a procedure calling for expeditious superintendence by district courts. The lawmakers specified a short time, 30 days, for motions to remand for defects in removal procedure, 28 U. S. C. § 1447(c), and district court orders remanding cases to state courts generally are "not reviewable on appeal or otherwise," § 1447(d). Congress did not similarly exclude appellate review of refusals to remand. But an evident concern that may explain the lack of symmetry relates to the federal courts' subject-matter jurisdiction. Despite a federal trial court's threshold denial of a motion to remand, if, at the end

of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated. See Fed. Rule Civ. Proc. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Finn*, 341 U. S., at 18. In this case, however, no jurisdictional defect lingered through judgment in the District Court. To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice.

Lewis ultimately argues that, if the final judgment against him is allowed to stand, "all of the various procedural requirements for removal will become unenforceable"; therefore, "defendants will have an enormous incentive to attempt wrongful removals." Brief for Respondent 9. In particular, Lewis suggests that defendants will remove prematurely "in the hope that some subsequent developments, such as the eventual dismissal of nondiverse defendants, will permit th[e] case to be kept in federal court." *Id.*, at 21. We do not anticipate the dire consequences Lewis forecasts.

The procedural requirements for removal remain enforceable by the federal trial court judges to whom those requirements are directly addressed. Lewis' prediction that rejection of his petition will "encourag[e] state court defendants to remove cases improperly," *id.*, at 19, rests on an assumption we do not indulge—that district courts generally will not comprehend, or will balk at applying, the rules on removal Congress has prescribed. The prediction furthermore assumes defendants' readiness to gamble that any jurisdictional defect, for example, the absence of complete diversity, will first escape detection, then disappear prior to judgment. The well-advised defendant, we are satisfied, will foresee the likely outcome of an unwarranted removal— a swift and nonreviewable remand order, see 28 U. S. C.

§§ 1447(c), (d), attended by the displeasure of a district court whose authority has been improperly invoked. The odds against any gain from a wrongful removal, in sum, render improbable Lewis' projection of increased resort to the maneuver.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*