**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-2242

WAYTEC ELECTRONICS CORPORATION,

Plaintiff - Appellant,

versus

ROHM AND HAAS ELECTRONIC MATERIALS, LLC;
NORTHERN LAMINATE SALES, INCORPORATED, d/b/a
NLS Technologies,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg. Samuel G. Wilson, District
Judge. (6:05-cv-00024-sgw)

Argued: November 2, 2007          Decided: November 28, 2007

Before MOTZ and GREGORY, Circuit Judges, and Claude M. HILTON,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Frank Kenneth Friedman, WOODS ROGERS, P.L.C., Roanoke,
Virginia, for Appellant. William R. Rakes, Monica Taylor Monday,
GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellees. **ON
BRIEF:** Mark D. Loftis, James F. Douthat, WOODS ROGERS, P.L.C.,
Roanoke, Virginia, for Appellant. Victor S. Skaff, III, GENTRY,
LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Waytec Electronics Corporation ("Waytec"), a manufacturer of printed circuit boards, brought this action against the manufacturer, Rohm and Haas Electronic Materials, LLC ("Rohm and Haas"), and distributor, Northern Laminate Sales, Inc. ("NLS"), of Copper Gleam PPR, a chemical solution used in the production of circuit boards. Although Waytec used Copper Gleam PPR successfully for a number of years, the company began to notice cracking in the copper plating on some of its circuit boards in 2000 and 2001, and executives attributed the problem to the use of Copper Gleam PPR. Waytec sued Rohm and Haas and NLS, alleging fraud in the inducement, breach of express and implied warranties, negligence, and conspiracies to defraud and willfully injure Waytec through the sale of the Copper Gleam PPR. The district court granted judgment to Rohm and Haas and NLS; we affirm.

I.

To ensure the conductivity of its circuit boards, Waytec employs an electrolytic copper plating process that results in the addition of a layer of copper to the exposed surfaces and holes of the circuit boards. That process entails immersing the boards in a chemical bath and then sending an electric charge through the bath to create a chemical reaction that causes copper deposits to adhere to the surfaces of the boards. If the plating process

2

produces copper deposits that are insufficiently thick, the plating will crack during use.  Those cracks destroy the circuit boards' electrical conductivity and cause the boards to fail.

Prior to 1997, Waytec used a direct current process, in which the electrical current flows in only one direction through the chemical bath.  In 1997, Robert Welch, who now serves as Waytec's Process Engineering Manager, elected to switch from the direct current process to a pulse periodic reverse process, in which the electric current flows in both directions.  The pulse periodic process requires a chemical product suitable for periodic pulse applications; Waytec purchased Copper Gleam PPR for that purpose.[*] From 1997 through 2000, Waytec experienced no difficulties with Copper Gleam PPR.

In 2000, Waytec began to notice cracking in its circuit boards, and, by 2001, customers started to complain about the problem.  The development of this problem coincided with changes in Waytec's manufacturing process; the company began to produce multi-layered, rather than double-sided, boards and also reduced the total volume of boards it was producing, decreasing the number of units produced by forty to fifty percent.  As a result of these changes to its production process, Waytec left the tanks idle for

---

[*]When Waytec implemented the pulse periodic reverse process in 1997, it purchased Copper Gleam PPR from Shipley Company.  Shipley acquired LeaRonal, Inc. in 1999, and the combined company was known as Shipley/Rohm and Haas.  In 2004, the company became Rohm and Haas Electronic Materials.

longer periods of time than it had previously. When production resumed after such periods, Waytec engineers observed higher levels of organic materials accumulating in the chemical solution, a problem that experts in the field often link to cracking problems.

Shortly after Waytec began to experience the higher incidence of cracking, representatives from Rohm and Haas and NLS traveled to Waytec to help diagnose the cause of the problem and recommend ways to prevent its occurrence in the future. These representatives suggested that Waytec make a number of process improvements. Welch followed their recommendation that he periodically treat the chemical bath with carbon to remove the build-up of organic products in the treatment solution. The Rohm and Haas and NLS representatives also made several other suggestions, e.g., improve quality control, use deionized water, and install new technology to better regulate temperature in the chemical baths, but Waytec declined to implement any of these proposals. At trial, Welch acknowledged that a number of these operational controls were also included as recommendations on the Copper Gleam PPR data sheets, but he explained that he did not believe that all of the changes were necessary at his particular facility. Welch also declined to switch to a newer generation product recommended by Rohm and Haas and NLS, citing concerns that the new product was more costly than Copper Gleam PPR.

4

By 2004, Waytec was the only one of Rohm and Haas' customers still using Copper Gleam PPR; others had switched to the newer product. At this time, Rohm and Haas requested that Waytec executives sign a waiver of liability if Waytec continued to use the product without adopting the majority of Rohm and Haas' process improvement recommendations. Waytec executives refused to sign the waiver. Instead, Welch selected another supplier for the chemical bath product and began to switch from the pulse periodic reverse process back to the direct current plating process Waytec had employed prior to 1997. In order to convert to the new chemical product and complete the transition to the direct current system, Waytec cleaned the tanks that circulated the chemical solution during the plating process. The copper plating ceased cracking after Waytec made these changes. Both Welch and Kenneth Shirley, the company's current Chief Executive Officer, attribute the cessation in cracking solely to Waytec's use of a product other than Copper Gleam PPR.

## II.

Rohm and Haas and NLS moved for summary judgment on multiple grounds, including that Waytec had no evidence of fraud or causation and that Waytec had disclaimed all warranties except for one, and with respect to that warranty, Rohm and Haas and NLS had disclaimed all consequential and incidental damages. The district

5

court held the defendants' motion under advisement and proceeded to trial in stages; at the first stage, it required Waytec to prove its fraud case with clear and convincing evidence. At the conclusion of the first stage, the court found that Waytec had failed to present scientifically reliable evidence that Copper Gleam PPR caused Waytec's cracking problems and also determined that there was no evidence that either Rohm and Haas or NLS fraudulently induced Waytec to purchase the Copper Gleam PPR. Accordingly, the court granted the defendants' motion for judgment with respect to Waytec's actual and constructive fraud claims and dismissed Waytec's breach of warranty claims. Waytec appeals.

Waytec asserts that the district court improperly exercised jurisdiction over the case because Rohm and Haas and NLS did not comply with the procedural requirements for removing the case from state to federal court. Waytec next contends that the district court abused its discretion in excluding evidence that other circuit board manufacturers suffered similar cracking problems when using Copper Gleam PPR and in striking the opinion testimony of Waytec's proffered experts. Finally, Waytec claims that the district court erred in granting judgment as a matter of law on Waytec's actual fraud claim and summary judgment on Waytec's constructive fraud claim and dismissing Waytec's breach of warranty claims. Waytec contends that it met its evidentiary burdens by demonstrating that Rohm and Haas and NLS concealed their knowledge

6

about defects in Copper Gleam PPR and intentionally provided Waytec with faulty guidance about how to resolve its cracking problems. We deal first with the removal issue and then consider Waytec's remaining arguments.

## III.

Waytec contends that Rohm and Haas and NLS failed to comply with the procedural requirements for removing this case from state to federal court, because NLS never filed its own notice of removal and Rohm and Haas did not file an electronic joint notice of removal containing the signatures of attorneys for both Rohm and Haas and NLS. See 28 U.S.C.A. § 1446(b); Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means 12 (W.D. Va. rev. Jan. 2005) (local rule of procedure). We need not determine whether removal was proper, however, because any such procedural defect in the removal process would not constitute grounds to vacate the district court's judgment and remand the case to state court.

In Caterpillar Inc. v. Lewis, 519 U.S. 61, 73, 77-78 (1996), the Supreme Court held that after a district court has allowed a case to be removed to federal court, the mere fact that "removal did not comply with statutory prescriptions" does not require that the appellate court vacate the lower court judgment and remand the case to state court. The Court explained that "[o]nce a diversity

7

case has been tried in federal court, with rules of decision supplied by state law . . . considerations of finality, efficiency, and economy become overwhelming." Id. at 75. Accordingly, although an appellate court must vacate a district court judgment when a "jurisdictional defect remains uncured" at the end of a proceeding, the appellate court is not similarly required to vacate the judgment below when the asserted error is merely procedural. Id. at 77. Rather, "[t]he procedural requirements for removal remain enforceable [only] by the federal trial court judges to whom those requirements are directly addressed." Id. The Court reasoned that, "[t]o wipe out the adjudication postjudgment, and return [such a case] to state court[,] . . . would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." Id.

We have held that failure of all defendants to properly join in removal proceedings is merely a procedural defect, not a jurisdictional one. See Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006). The asserted procedural error in this case, which arises from NLS's failure to file its own notice of removal and Rohm and Haas' failure to file an electronic joint notice of removal containing the signatures of both defendants, does not overcome the "considerations of finality, efficiency, and economy" held by the Supreme Court to be paramount. See Caterpillar, 519 U.S. at 75. Such error, if it exists, does

8

not supply sufficient grounds to vacate the judgment of the district court and remand this case to state court. See id. at 77.

Accordingly, we turn to Waytec's remaining arguments.

IV.

Prior to trial, Rohm and Haas and NLS moved in limine to exclude evidence that other circuit board manufacturers experienced cracking problems similar to those that occurred at Waytec when they used Copper Gleam PPR. The district court provisionally granted the defendants' motion, finding that the danger that the evidence would confuse the issues or mislead the jury substantially outweighed its probative value. See Fed. R. Evid. 403. The court reasoned that proof that cracking occurred at other facilities, and that Rohm and Haas settled some of the complaints lodged by other circuit board manufacturers, did not demonstrate that Copper Gleam PPR caused the cracking at Waytec. The court also noted that Federal Rule of Evidence 408 prohibited admission of evidence of the settlements, because the claims underlying those settlements were never adjudicated, and Rohm and Haas disputed the validity of those claims.

At trial, the court also excluded the expert opinions of the two Waytec witnesses who testified that Copper Gleam PPR caused Waytec's cracking problems. The court determined, pursuant to its role as a "gatekeeper" responsible for ensuring the relevance and

9

reliability of scientific testimony, "that Waytec presented no scientifically reliable evidence that Copper Gleam rather than its own process or other external factors caused the cracking it sought to attribute to Copper Gleam." See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 157 (1999). Because Waytec's experts failed "to take serious account of other potential causes," Westberry v. Gislaved Gummi AB, 178 F.3d 257, 265 (4th Cir. 1999), or "offer an explanation for why the proffered alternative cause[s] w[ere] not the sole cause" of the problem, Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 202 (4th Cir. 2001) (citing Westberry, 178 F.3d at 265-66), the district court determined that the experts' opinions on causation lacked sufficient reliability and so would not be admitted into evidence.

At the conclusion of the first stage of the trial, the court found that Waytec failed to carry its burden of proof that Copper Gleam PPR caused the problems in its manufacturing process. Waytec's failure to prove causation doomed its fraud claims. The court additionally observed that the fraud claims also failed because Waytec had not demonstrated that representatives of Rohm and Haas and NLS had either made a false representation to Waytec about Copper Gleam PPR or intended to mislead Waytec. Nor had Waytec demonstrated that it detrimentally relied on representations by Rohm and Haas or NLS. Because the court found that Waytec

10

failed to prove that Rohm and Haas and NLS fraudulently induced Waytec to enter into contracts for the sale of Copper Gleam PPR, the court also dismissed Waytec's breach of warranty claims.

Having had the benefit of oral argument and briefing from the parties, and after carefully reviewing the record, we conclude that the district court did not abuse its discretion in excluding either the "similar incidents" evidence or the challenged expert testimony. We also find that the district court did not err in granting judgment as a matter of law to Rohm and Haas and NLS on Waytec's fraud claims and in dismissing Waytec's breach of warranty claims. Accordingly, we affirm those rulings on the basis of the district court's well-reasoned opinion.

V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.