NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4632
_____

IN RE: LIPITOR ANTITRUST LITIGATION


RP HEALTHCARE, INC.; CHIMES PHARMACY, INC.;
JAMES CLAYWORTH, R.Ph., d/b/a Clayworth Pharmacy;
MARIN APOTHECARIES, INC., d/b/a Ross Valley Pharmacy;
GOLDEN GATE PHARMACY SERVICES, INC., d/b/a Golden Gate Pharmacy;
PEDIATRIC CARE PHARMACY, INC.; MEYERS PHARMACY, INC.;
TONY MAVRANTONIS R. PH., d/b/a Jack's Drugs;
TILLEY APOTHECARIES INC, d/b/a Zweber's Apothecary,

Appellants
_____

On Appeal from United States District Court
for the District of New Jersey
(D.N.J. No. 3-12-cv-05129) / (MDL 2332) / (D.N.J. No. 12-cv-02389)
District Judge:  Honorable Peter G. Sheridan
_____

Argued September 27, 2016
Before:  AMBRO, SMITH[*] and FISHER,[**] *Circuit Judges*.

(Filed:  January 3, 2018)

_____

[*] Honorable D. Brooks Smith, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on October 1, 2016.
[**] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.

Joseph M. Alioto, Esq. *[ARGUED]*
Angelina Alioto-Grace, Esq.
Theresa Driscoll Moore, Esq.
Alioto Law Firm
One Sansome Street, 35th Floor
San Francisco, CA 94104

James M. Dombroski, Esq.
P.O. Box 751027
Petaluma, CA 94975

Timothy A. C. May, Esq.
Gil D. Messina, Esq.
Messina Law Firm
961 Holmdel Road
Holmdel, NJ 07733

Jeffery K. Perkins, Esq.
1550-G Tiburon Boulevard, #344
Tiburon, CA 94920

Tom Pier, Esq.
Alioto & Alioto
505 Sansome Street
Two Transamerica Center, 17th Floor
San Francisco, CA 94111

Ekaterina Schoenefeld, Esq.
32 Chambers Street, Suite 2
Princeton, NJ 08542
  *Counsel for Appellants*

Jonathan D. Janow, Esq.
John C. O'Quinn, Esq.
Kirkland & Ellis
655 15th Street, N.W., Suite 1200
Washington, DC 20005

Jay P. Lefkowitz, Esq. *[ARGUED]*
Kirkland & Ellis
601 Lexington Avenue
New York, NY 10022

Joseph Serino, Jr., Esq.
Latham & Watkins
885 Third Avenue, Suite 1000
New York, NY 10022
      *Counsel for Appellees Ranbaxy Pharmaceuticals Inc., Ranbaxy Laboratories Ltd.,*
      *Ranbaxy Inc.*

Dimitrios T. Drivas, Esq.
Raj S. Gandesha, Esq.
Bryan D. Gant, Esq.
Sheryn E. George, Esq.
Robert A. Milne, Esq. *[ARGUED]*
Brendan G. Woodard, Esq.
White & Case
1221 Avenue of the Americas
New York, NY 10036

Eleonore Ofosu-Antwi, Esq.
Liza M. Walsh, Esq.
Walsh Pizzi O'Reilly & Falanga
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, NJ 07102

Rukhsanah Singh, Esq.
Connell Foley
1085 Raymond Boulevard
One Newark Center, 19th Floor
Newark, NJ 07102
      *Counsel for Appellees Warner Lambert Co. LLC, Warner Lambert Co., Pfizer*
      *Ireland Pharmaceuticals, Pfizer Inc.*

Katherine A. Helm, Esq.
Noah M. Leibowitz, Esq. *[ARGUED]*
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

David C. Kistler, Esq.
Blank Rome
301 Carnegie Center, Third Floor
Princeton, NJ 08540
 *Counsel for Appellees Dai Ichi Sankyo Co. Ltd., Dai Ichi Sankyo Inc.*

Philip S. Goldberg, Esq.
Shook Hardy & Bacon
1155 F Street NW, Suite 200
Washington, DC 20004
 *Counsel for Amicus Appellee American Tort Reform Association, Pharmaceutical Research and Manufacturers of America*

Peter J. Curtin, Esq.
William A. Rakoczy, Esq.
Rakoczy Molino Mazzochi & Siwik
6 West Hubbard Street, Suite 500
Chicago, IL 60654
 *Counsel for Proposed Amicus-Appellee*

Steve D. Shadowen, Esq.
Hilliard & Shadowen
919 Congress Avenue, Suite 1325
Austin, TX 78701
 *Counsel for Amicus Appellants 48 Law Economic and Business Professors and American Antitrust Institute*

_____

OPINION[*]

_____

PER CURIAM

The present matter is one part of the complex antitrust litigation involving the pharmaceutical product Lipitor and a settlement agreement between Pfizer Inc. and Ranbaxy Inc. This Court has already issued two precedential opinions in this case. *Lipitor III* was jurisdictional in focus and we concluded that the Plaintiffs' antitrust claims did not "arise under" patent law.[1] Consequently, we denied the Defendants' motions for transfer to the Federal Circuit.[2] In the subsequent merits opinion, *Lipitor IV*, we reversed the District Court's dismissal of the Plaintiffs' consolidated complaints.[3]

The present Plaintiffs—a group of California pharmacists collectively referred to as RP Healthcare—constitute a distinct party within the broader Lipitor litigation, and their complaint presents unique legal questions, both substantive and jurisdictional. In contrast to the other Plaintiffs, RP Healthcare bases its claim exclusively on California's

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] *In re: Lipitor Antitrust Litig.*, 855 F.3d 126, 145 (3d Cir. 2017). We continue the same numbering scheme used in our previous opinions. *Lipitor I* and *Lipitor II* are opinions of the District Court.

[2] *Id.*

[3] *In re: Lipitor Antitrust Litig.*, 868 F.3d 231 (3d Cir. 2017).

antitrust statute, the Cartwright Act.[4] Therefore, whether we may exercise jurisdiction turns on the diversity of the parties.[5] In *Lipitor III*, we held that the record lacked sufficient evidence to determine the citizenship of each Defendant, so we directed the District Court to conduct limited discovery on that issue.[6] Of course, with the jurisdictional question undecided, we could not reach the merits of RP Healthcare's complaint in *Lipitor IV*. On remand, the District Court found that there was complete diversity amongst the parties and upheld jurisdiction on that basis. We will affirm.

Turning to the merits, we will also affirm the District Court's dismissal of RP Healthcare's complaint, but for different reasons. Finally, we will affirm the District Court's ruling that it lacked personal jurisdiction over one of the Defendants, Daiichi Sankyo Company, Ltd.

I.

*Diversity Jurisdiction*

RP Healthcare filed its initial complaint in California state court. Following removal—and transfer by the Judicial Panel on Multidistrict Litigation—the District Court declined to remand the case back to state court, grounding its finding of federal jurisdiction in potential patent defenses of the Defendants. Because federal "arising under" jurisdiction must be based on a plaintiff's complaint, not possible defenses, we

---

[4] Cal. Bus. & Prof. Code § 16700 *et seq.*
[5] The parties agree that the amount in controversy exceeds $75,000.
[6] *Lipitor III* 855 F.3d at 134.

6

observed in *Lipitor III* that this ruling was in error.[7] That did not end our analysis, however, because after the District Court declined to send the case back to state court, but prior to final judgment, RP Healthcare voluntarily dismissed what appeared to be each of the remaining non-diverse Defendants, with the "appeared to be" resulting from the aforementioned uncertainty over the citizenship of several Defendants. Our Order in *Lipitor III* asked the District Court to resolve this uncertainty.[8]

Back in the District Court, the parties stipulated that at the time of final judgment all of the Plaintiffs were citizens of California and none of the Defendants were citizens of California. Complete diversity being established, the District Court held that it had jurisdiction under 28 U.S.C. § 1332. We agree. As discussed in *Lipitor III*, a District Court may exercise jurisdiction if, at the time of final judgment, there is a proper basis.[9] This is the case even if, at an earlier point in the proceedings, there was no basis for federal jurisdiction.[10] RP Healthcare's original remand motion should have been granted for lack of jurisdiction, but, by the time of final judgment, there was complete diversity between the parties. Therefore, the District Court's jurisdiction was ultimately proper, notwithstanding the prior erroneous decision.

II.

*RP Healthcare's Complaint*

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at 150 (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996)).
[10] *Caterpillar*, 519 U.S. at 64.

7

Having established jurisdiction over RP Healthcare's complaint, we may now turn to its merits. Put very briefly, a reverse settlement occurs (almost exclusively in the pharmaceutical sector) when a patent holder sues an alleged infringer and the suit is settled with a large payment from the patent holder to the infringer. Such a settlement is usually accompanied by a promise from the infringer to exit the market for a certain length of time. A distinguishing feature of a reverse settlement is that the bargained-for abstention period falls within the term of the patent at issue, when the patent holder would normally enjoy a government-conferred monopoly. Absent the patina of patent protection, the agreement would be nakedly anti-competitive. In this case, Pfizer sued Ranbaxy for infringement of a Lipitor patent and the parties entered into an agreement bearing many of the now-familiar hallmarks of a reverse settlement. RP Healthcare's complaint alleges that this agreement constituted a per se antitrust violation under the Cartwright Act.

The District Court previously dismissed the RP Healthcare complaint under Rule 12(b)(6) for the same reason it dismissed those of the other Plaintiffs: its failure to calculate the reasonable value of the alleged "reverse payment" between Pfizer and Ranbaxy. As to those other Plaintiffs, we reversed this dismissal in *Lipitor IV*, concluding that in reverse settlement cases "[t]he Supreme Court did not require the advanced valuations . . . required by the District Court."[11] Throughout this litigation, however, RP

---

[11] *Lipitor IV*, 868 F.3d at 255.

8

Healthcare has been at pains to stress that it is alleging a per se antitrust violation, not a reverse settlement claim under *FTC v. Actavis*,[12] so the same reasoning ought not to apply. We agree, and this distinction is fatal to its claim. Under California antitrust law, a reverse settlement may not be attacked on a per se basis, so the District Court's dismissal was proper.

As we observed in *Lipitor IV*, "[p]rior to [the Supreme Court's decision in] *Actavis*, several courts had held that [reverse settlement] agreements were immune from antitrust scrutiny so long as the asserted anticompetitive effects fell within the scope of the patent."[13] In *Actavis*, the Court rejected this categorical rule and held that, in general, "patent and antitrust policies are both relevant"[14] in determining the proper level of antitrust immunity conferred by a patent, and, in particular, reverse settlements implicate antitrust concerns when their payments are "large and unjustified."[15]

The California Supreme Court applied the reasoning of *Actavis* to the Cartwright Act in *In re Cipro Cases I & II*.[16] Of particular importance to the RP Healthcare complaint, the California Supreme Court first determined what degree of antitrust scrutiny should apply to a reverse settlement. Under California law, "certain categories of agreements or practices that can be said to always lack redeeming value . . . [are] per se

---

[12] 133 S. Ct. 2223 (2013).
[13] 868 F.3d at 250 (internal citations and quotations omitted).
[14] *Actavis*, 133 S. Ct. at 2231.
[15] *Id.* at 2237.
[16] 61 Cal. 4th 116, 142-43 (2015).

illegal."[17] However, reverse settlements do not fall within the per se category and must instead be scrutinized under a structured rule of reason analysis.[18] Because the agreement between Pfizer and Ranbaxy was a reverse settlement, RP Healthcare's claim of a per se violation of the Cartwright Act necessarily fails under *Cipro*.

Perhaps cognizant of this unremarkable application of California law, RP Healthcare attempts to escape *Cipro*'s reach by arguing that the agreement between Pfizer and Ranbaxy was not a reverse settlement at all. Whereas reverse settlements regulate activity within the term of a disputed patent, it argues, the agreement in this case only covered the time period following the expiration of the Lipitor patent. RP Healthcare dates this expiration to June 28, 2011, but this is simply inaccurate. To be sure, *a* Lipitor patent expired on that date, but RP Healthcare conspicuously ignores the fact that Lipitor was covered by at least five other patents that expired between 2013 and 2017, well outside the period contemplated by the settlement agreement. Whether Ranbaxy could have designed around these later-expiring patents—thus producing a generic version of Lipitor without infringing upon them—is relevant under a rule of reason analysis.[19] But questions about the practical durability of a patent have no bearing on its presumed validity. The settlement agreement's basic attributes, which cannot be ignored, reveal that

---

[17] *Id.* at 146.

[18] *Id.* at 148.

[19] The ease with which a generic manufacturer could design around such patents would serve as a relevant indicator of the overall strength of Pfizer's position in negotiating the settlement. The weaker a patent holder's position, the more likely a reverse settlement will be found anti-competitive. *Actavis*, 133 S. Ct. at 2236-37.

10

it was a straightforward reverse settlement under *Cipro*. This forecloses any claim of a per se antitrust violation.

III.

*Personal Jurisdiction Over Defendant Daiichi Sankyo Company, Ltd.*

One final matter remains from our Order in *Lipitor III*. When the District Court originally dismissed the present complaint, it did so under Rule 12(b)(6). One Defendant, however, Daiichi Sankyo Company, Ltd., had asserted an alternative basis for dismissal under Rule 12(b)(2) for want of personal jurisdiction. The District Court never addressed Daiichi Limited's personal jurisdiction motion, which should have logically preceded any decision under Rule 12(b)(6).[20] Following our limited remand in *Lipitor III*, the District Court found that it lacked personal jurisdiction and modified its dismissal order to reflect Rule 12(b)(2) as the proper basis. We will affirm.

As the District Court found, Daiichi Limited (1) is a Japanese corporation; (2) is not incorporated or registered to do business in California; (3) has no offices or other company facilities in California; (4) has no employees in California; and (5) has no appointed agent for service of process in California. RP Healthcare claims that personal jurisdiction exists because Daiichi Limited allegedly conditioned its purchase of stock from Ranbaxy, an Indian company, upon Ranbaxy entering into the present agreement with Pfizer. Following a motion for dismissal under Rule 12(b)(2), the burden is on the

---

[20] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

11

plaintiff to prove personal jurisdiction by a preponderance of the evidence.[21] We agree with the District Court that RP Healthcare has failed to allege, let alone prove, any facts that would support a California court's exercise of personal jurisdiction. Even if the allegations regarding the sale of stock are true, such an agreement would not show that Daiichi Limited "purposefully availed itself of the privilege of conducting activities within" California, as would be required to support personal jurisdiction.[22]

## IV.

The Order of the District Court will be AFFIRMED.

---

[21] *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998) (citations omitted).
[22] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).