NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3122
_____

SYNC LABS LLC; CODRUT RADU RADULESCU,

Appellants

v.

FUSION-MANUFACTURING; MICHAEL R. FERCHAK
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-11-cv-03671)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 10, 2020

BEFORE: HARDIMAN, GREENBERG, and SCIRICA, Circuit Judges.

(Filed: November 18, 2020)

_____

OPINION*
_____

GREENBERG, Circuit Judge.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

## I.     INTRODUCTION

This matter comes on before this Court on the appeal of Plaintiffs-Appellants Sync Labs LLC and Codrut Radu Radulescu, a citizen of New Jersey.  Although both of those parties are appellants, we will refer to Appellant in the singular meaning Radulescu. Appellant appeals from multiple orders of the District Court following the Court's August 15, 2019 order granting Defendants-Appellees' Fusion Manufacturing and Michael Ferchak (together "Appellees"), citizens of Florida, motion to dismiss for lack of prosecution.  For the reasons set forth below, we will affirm.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

We only recite the facts and procedural history necessary to resolve this appeal. This case arose from a failed business relationship between Radulescu and Ferchak.  In 2007, Radulescu began operating Sync Labs,[1] a New Jersey limited liability company in which he originally was the sole member.  Ferchak is the owner and managing director of defendant Fusion Manufacturing.[2]  Appellant contends that Sync Labs at the times material to this case was a citizen of both New Jersey and Florida as Radulescu and Ferchak were its members and respectively are citizens of those states.  Ferchak entered into an Agreement with Sync Labs which provided that he would work for Sync Labs in

---

[1] Sync Labs originally operated under the company name Phoenix Labs LLC.

[2] Although not addressed substantially in the parties' briefs, Appellant named Fusion Manufacturing as a defendant because, inter alia, Ferchak signed a non-disclosure agreement on behalf of himself and Fusion Manufacturing, which Appellant alleges Ferchak breached.

exchange for hourly compensation and receipt of 8.33 Class B units of Profit Interest ("BUPIs") in Sync Labs, which were non-transferrable and did not give Ferchak voting rights. He also entered into a "Funding Agreement", in which he agreed to provide "matching funds" to Sync Labs to make it eligible for a New Jersey Commission on Science and Technology grant and would give him an ownership interest in Sync Labs. Later Ferchak agreed to pay Sync Labs $20,000 in exchange for 4,000 Class A UPIs ("AUPIs"). The New Jersey Commission on Science and Technology awarded Sync Labs the grant, but shortly thereafter the relationship between Appellant and Ferchak deteriorated. On May 30, 2010, Ferchak tendered his resignation from Sync Labs, effective April 1, 2010.

On May 31, 2011, Radulescu and Sync Labs filed this action against Ferchak and Fusion-Manufacturing in the New Jersey Superior Court setting forth claims arising under state law. On June 27, 2011, Appellees removed the matter to the District of New Jersey on the basis of diversity of citizenship jurisdiction.

After Sync Lab's original counsel withdrew his representation, Radulescu, who is an attorney, filed a Notice of Appearance on behalf of Sync Labs. On June 7, 2012, the District Court disqualified Radulescu from representing Sync Labs and granted Sync Labs thirty days to retain new counsel. Sync Labs failed to obtain new counsel, and after protracted motion practice, the Court dismissed Sync Labs from the case with prejudice. On November 16, 2016, the Court entered an order partially, but largely, granting a motion for summary judgment that Appellees had filed.

3

Radulescu proceeded pro se until April 20, 2017, when counsel appeared on behalf of him and Sync Labs. The attorney filed a motion to remand the case to the state court but the District Court denied the motion on June 13, 2017. On April 2, 2019, the Court administratively closed the matter and set a June 3, 2017 deadline for the parties to move to reopen the action. On the day of the deadline, Radulescu filed a motion to reopen. Thereafter Appellees cross-moved to dismiss the case for lack of prosecution, and the Court granted this motion on August 15, 2019. Thus, the matter came to an end in the District Court.

III.    ANALYSIS

Appellant first argues that the District Court lacked jurisdiction over the case at the time of removal and therefore the Court was required to remand the case to the state court. He further argues that the Court erred when it granted summary judgment in favor of Appellees and abused its discretion when it dismissed the action for lack of prosecution. We address those issues in the same order in this opinion.

a.     **The June 13, 2017 Order denying Appellant's Motion to Remand**

"[J]urisdiction to hear cases in diversity arises under 28 U.S.C. § 1332(a), which provides that district courts 'have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States.'" Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010). But "[c]omplete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." Id.

4

(citation omitted). "[T]he citizenship of an LLC is determined by the citizenship of its members." Id. at 420.

We "review[] the question of whether the District Court had subject matter jurisdiction de novo." Babcock & Wilcox Co. v. Kan. City. S. Ry., 557 F.3d 134, 137 (3d Cir. 2009) (citation omitted). If we determine "that the District Court lacked subject matter jurisdiction, we will direct it to dismiss the case even at [a] late stage of the litigation." Id. (internal quotation marks omitted); see also Caterpillar Inc. v. Lewis, 519 U.S. 61, 76-77 (1996) ("[I]f, at the end of the day and case, a jurisdictional defect remains uncured, the judgment must be vacated.").

Notably, however, in Caterpillar, the Supreme Court held that a district court may entertain jurisdiction over an action if the jurisdictional flaw is cured prior to the point of final judgment. See Caterpillar, 519 U.S. at 73-77. In this case, even if we assume that there was not complete diversity of citizenship when Appellees removed the case,[3] when the District Court dismissed Sync Labs from the case the jurisdictional defect was cured as the remaining plaintiff, Radulescu, is a citizen of New Jersey, and Appellees are citizens of Florida.

---

[3] We find it concerning that after nearly a decade of litigation, the record seems not to include any document definitively identifying Sync Labs' members. In fact, the District Court noted that "[a]bsent Sync Lab's operating agreement, the court cannot determine Sync Lab's membership as of the filing of the Complaint . . . ." (App. 34.) The Court, however, noted that Appellant, "the only other Sync Lab member as of April 2010, asserts that Ferchak resigned," accordingly, "complete diversity would have existed from the case's inception if Ferchak's resignation had been effective." (Id.) Ultimately, the Court concluded that it likely lacked subject matter jurisdiction at the time of removal. At this point that does not matter because the jurisdictional problem was cured when the Court dismissed Sync Labs from the case.

Appellant attempts to distinguish this case from <u>Caterpillar</u> by focusing on the procedural distinctions between the two cases. Those differences, however, are immaterial in light of <u>Caterpillar</u>'s clear message emphasizing "considerations of finality, efficiency, and economy." <u>Caterpillar</u>, 519 U.S. at 75; <u>see also</u> <u>id.</u> at 77 ("To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice."). The District Court appropriately found that such policy considerations would be frustrated if it remanded the case "especially when subject matter jurisdiction exists now, has existed for nearly three years, and existed when the Court entered judgment [against Appellant] on [most of Appellant's] ten claims." (App. 37.)

Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (2004), on which Appellant relies, does not save his argument. In fact, <u>Grupo Dataflux</u> illuminated the distinction between that matter, in which the jurisdictional defect was cured by a "change in the citizenship of a continuing party," <u>id.</u> at 575, and the issue discussed in <u>Caterpillar</u>, where, as here, the party whose presence created the jurisdictional defect had been dismissed from the case. <u>Caterpillar</u>, 519 U.S. at 73. Thus, contrary to Appellant's arguments, <u>Caterpillar</u> governs the jurisdictional issue in this case because after the District Court dismissed Sync Labs, there was complete diversity between the remaining parties. <u>See, e.g.</u>, <u>Grupo Dataflux</u>, 541 U.S. at 573-74 (distinguishing cases in which a

continuing party changes citizenship and cases where the presence of the party that created the jurisdictional defect is dismissed).[4]

Finally, Appellant argues Sync Labs was an indispensable party in this case and therefore the District Court should not have dismissed it as a party. But Appellant did not advance this argument in the District Court and thus it is raising that issue for the first time on appeal even though six years have passed since the Court dismissed Sync Labs from the action. Moreover, the Court warned Appellant on numerous occasions that his failure to retain counsel for Sync Labs would result in its dismissal. Therefore, there are no compelling reasons to warrant our consideration of the indispensable party argument on the appeal. See, e.g., Page v. Schweiker, 786 F.2d 150, 153 (3d Cir. 1986) (internal quotation marks and citation omitted) ("It is well-established that, absent compelling circumstances, an appellate court will not reverse on grounds raised for the first time on appeal . . . .").

In view of the above considerations we will affirm the District Court's June 13, 2017 order and hold that the Court was not required to remand the case to the state court because the jurisdictional defect has been cured and following Sync Labs' dismissal there was complete diversity of citizenship between the remaining parties.

---

[4] Appellant argues that the order dismissing Sync Labs from the case was ultra vires because there was not complete diversity of citizenship when the Court entered the order. Appellant points to no case or authority supporting such a retrospective approach, which taking into account the facts here, we find unpersuasive.

7

**b.**     **The November 16, 2016 Order granting Appellees' Motion for Summary Judgment**

Appellant next argues that the District Court erred when it granted partial summary judgment to Appellees.  Appellant mainly challenges the Court's refusal to permit him to pursue claims against Appellees on Sync Labs' behalf under an alleged assignment from Sync Labs.

We review de novo a district court's award of summary judgment.  Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).  "Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of material fact."  Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir. 1996); see also Fed. R. Civ. P. 56.  Further, we view the evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing the evidence.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The District Court found that the alleged assignment document, even assuming it was a binding legal document, cannot

> establish the individual claims alleged in [Appellant's] complaint because: (1) [Appellant's] assigned claims are distinct from any individual claims he might have as a result of [Appellees'] alleged harmful conduct; (2) [Appellant] waived the assigned claims by failing to raise them before his opposition brief to [Appellees'] [M]otion for [S]ummary [J]udgment, and (3) [Appellant] cannot reassert claims that were already dismissed with prejudice by the Court.

(App. 17.)

8

We are satisfied that the District Court appropriately granted summary judgment to Appellees. The Court correctly found that Appellant's introduction of the alleged assignment document was merely "an attempt to avoid the Court's dismissal of Sync Labs' claims." (App. 20.) As noted above, the Court repeatedly warned Appellant that his failure to retain counsel for Sync Labs would result in its dismissal from the case. After years of motion practice, and Appellant's failure to abide by various of the Court's directives, the Court dismissed Sync Labs with prejudice. Appellant cannot now resurrect claims on behalf of a party that was dismissed as a result of his own behavior by asserting—for the first time in approximately five years of litigation and in opposition to Appellees' motion for summary judgment—that there was an alleged assignment supporting his claims.[5] Accordingly, we will affirm the Court's order for summary judgment.[6]

---

[5] We express no opinion as to whether the assignment document constitutes competent evidence because even if it was competent it was not effective for the purpose for which Appellant advances. See, e.g., Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989) (Garth, J., concurring) (emphasis omitted) ("To defeat a motion for summary judgment, competent evidence must be produced . . . which reveal[s] a material dispute of fact that can only be resolved by a trier of fact at a trial.").

[6] We limit our review to the District Court's award of summary judgment to counts one, five, and eight of the Amended Complaint because Appellant limits its arguments on appeal with respect to the summary judgment to those counts. (See, e.g., Appellant's Br. 33 ("Accordingly, summary judgment held against [Appellant's] first count for breach of contract, fifth count for breach of implied duties and covenants of loyalty, care and fair dealing . . . , and eight[h] count for promissory estoppel, which [is] related to the contracts and agreements assigned to [Appellant,] should be reversed.").)

9

**c.**     **The August 15, 2019 Order Dismissing for Lack of Prosecution**

Finally, Appellant argues that the District Court abused its discretion when it dismissed the case for lack of prosecution. He contends that the Court's "cursory" decision "relie[d] on findings that were not supported by the record and did not consider the motion in light of this Court's strong policy in favor of deciding cases on the merits." (Appellant Br. 24.)

We review a district court's order for dismissal for lack of prosecution for an abuse of discretion. See Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962). The factors that we first set forth in Poulis v. State Farm Fire and Casualty Insurance Co., 747 F.2d 863, 868 (3d Cir. 1984) determine whether dismissal for lack of prosecution is warranted. Those factors are as follows:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Id. (emphasis omitted); see also Hildebrand v. Allegheny Cty., 923 F.3d 128, 132 (3d Cir. 2019).

On an appeal, "we do not have a magic formula or mechanical calculation to determine whether a District Court abused its discretion in dismissing a plaintiff's case." Hildebrand, 923 F.3d at 132 (internal quotation marks and citation omitted). A court considering the Poulis factors should not consider any particular factor dispositive, but "it

10

is also true that not all of the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution." Id. District courts, however, in considering the imposition of sanctions must keep in mind the "strong policy favoring decisions on the merits" and recognize that "dismissals with prejudice or defaults are drastic sanctions that must be a sanction of last, not first, resort." Id. (internal quotation marks and citations omitted). "If the case is close, doubts should be resolved in favor of reaching a decision on the merits." Id. (internal quotation marks and citation omitted).

We conclude that the District Court did not abuse its discretion when it dismissed with prejudice for lack of prosecution what remained of the case. Primarily, the record demonstrates that the delay in this matter was largely due to Appellant's own behavior. See id. at 135 (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)). In fact, the Court appropriately noted that although Appellant's counsel "attempt[ed] to take the blame" for the nearly twenty-two months this matter remained inactive, Appellant himself was registered on ECF and therefore received all electronic notices. See, e.g., id. at 135-36 (discussing the difference between a plaintiff who is personally responsible for a "hiatus" versus his or her counsel). Accordingly, Appellant was fully apprised of the Court's docketed entries and of the matter's inactive status.

We recognize that the District Court's analysis might be regarded as not particularly comprehensive with respect to Poulis factor five, which requires an analysis of the appropriateness of alternative sanctions. See 747 F.2d at 868. On the other hand, however, Appellees had moved, though unsuccessfully, for sanctions previously. We are concerned that in dismissing the matter for lack of prosecution, the Court did not provide

11

an analysis that might have led it to impose less severe alternative sanctions to dismissal. But it did indicate that "[g]iven [Appellant's] prior conduct and the Court's prior admonitions, this Court is not satisfied that alternative sanctions would be effective." (App. 40.) Our consideration of the entire record leads us to conclude that the District Court did not abuse its discretion in its analysis of the Poulis factors, particularly in light of Appellant's personal responsibility for the case's delay and the prejudice caused to Appellees in being required to defend against "protracted litigation" caused largely by Appellant's "harassing tactics." See Poulis, 747 F.2d at 868. (App. 40.)

For the foregoing reasons, we will affirm the orders of November 16, 2016, June 13, 2017, and August 15, 2019.[7] Accordingly, the case remains dismissed.

---

[7] We have considered certain other arguments that Appellant raises and find that they lack merit and do not require discussion.

12